# United States Court of Appeals

## For the First Circuit

No. 00-1774

ARECIBO COMMUNITY HEALTH CARE, INC.,

Plaintiff, Appellee,

v.

COMMONWEALTH OF PUERTO RICO, DEPARTMENT OF HEALTH AND
THE ADMINISTRATION OF HEALTH SERVICES,

Defendants, Appellants,

CARLOS E. RODRÍGUEZ-QUESADA,

Trustee, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Salvador E. Casellas, U.S. District Judge]

---

Before

Torruella, Circuit Judge,
Coffin, Senior Circuit Judge,
and Campbell, Senior Circuit Judge.

---

Leticia Casalduc-Rabell, Assistant Solicitor General, with whom Roberto J. Sánchez-Ramos, Solicitor General, and Vanessa Lugo-Flores, Deputy Solicitor General, were on brief, for appellants.

Craig Goldblatt, with whom Anne Harkavy, Wilmer, Cutler & Pickering, Johnny Rivera-Gonzáles, Igor J. Domínguez, and Carlos E. Rodríguez-Quesada, were on brief, for appellee.

Mark B. Stern, Attorney, Civil Division, Department of Justice, with whom Stuart E. Schiffer, Acting Assistant Attorney General, Guillermo Gil, United States Attorney, and H. Thomas Byron III, Attorney, Civil Division, Department of Justice, were on brief, for the United States of America, amicus curiae.

October 29, 2001

**OPINION ON REHEARING**

**TORRUELLA, <u>Circuit Judge</u>.** This appeal requires us to determine the validity of § 106(b) of the Bankruptcy Code, 11 U.S.C. § 106(b),[1] in light of the Supreme Court's most recent Eleventh Amendment jurisprudence.[2] Upon initial review, we concluded that § 106(b) was constitutionally infirm. After rehearing and helpful supplemental briefing, however, we reach a different determination and conclude that our earlier decision misinterpreted recent Supreme Court precedent and, in doing so, failed to accord proper controlling value to an extant decision of this circuit.

We therefore vacate our earlier decision and affirm the district court's holding that upon appellants' filing a proof of claim in the bankruptcy court, they are not shielded by the Eleventh Amendment from compulsory counterclaims arising from the same transaction or occurrence as was the subject of the proof of claim.

---

[1] Section 106(b) of the Bankruptcy Code provides that the filing of a proof of claim in federal bankruptcy court by "[a] governmental unit . . . is deemed [to be a] waiver of sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose." 11 U.S.C.A. § 106(b) (West Supp. 2001).

[2] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It has long been established that, notwithstanding its literal language, the Eleventh Amendment extends to bar suits instituted in federal courts against a state by its own citizens. <u>See</u> <u>Hans</u> v. <u>Louisiana</u>, 134 U.S. 1 (1890).

## I.  Background

In March 1984, the Puerto Rico Department of Health (the "Department") and the Administration of Health Facilities ("AFASS") -- both of which are instrumentalities of the Commonwealth of Puerto Rico -- executed a series of contracts with a private entity, Arecibo Community Health Care, Inc. ("ACHI"), for the administration of the Arecibo Regional Hospital, a government-owned hospital in Arecibo, Puerto Rico.  The last of these contracts was terminated in 1991.

On June 30, 1991, the Department filed suit against ACHI in the Superior Court of Puerto Rico.  The complaint alleged that ACHI had failed to render services pursuant to the administration contract with the Department.  Thereafter, on July 2, 1991, ACHI filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code.  The bankruptcy court determined that the contract in dispute had been terminated prior to the filing of the petition, whereupon the Department and AFASS proceeded to file a proof of an unsecured claim for ACHI's breach of the administration contract.  The claim was for the amount of $1,650,449.16.

The bankruptcy proceeding was subsequently converted to one under Chapter 7, and a trustee was appointed.  The trustee commenced an adversary action against the Department and AFASS asserting various claims under state law.  The claims allegedly arise from the same contract and operative facts as both the action filed by the Department

-4-

in the Puerto Rico courts and the proof of claim filed in federal bankruptcy court. The trustee sought to recover the sum of $8,204,494.48, interest accrued since 1991, attorneys' fees, and litigation costs.

In their Answer to the Complaint, the Department and AFASS ("appellants") asserted that the trustee's claims were barred by the Eleventh Amendment.[3] Thereafter they moved to dismiss the action on this ground. The bankruptcy court concluded that the holding in Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996) (holding that Congress may not abrogate the state's Eleventh Amendment immunity pursuant to its Article I powers), required such an outcome and concluded that both sections 106(a)[4] and (b) were invalid as applied to appellants. The bankruptcy court reasoned that if Congress could not abrogate the states' Eleventh Amendment sovereign immunity under Seminole Tribe, it could not do so by what amounts to a conditional waiver. It thus ruled that appellants could not be deemed to have waived their Eleventh Amendment immunity by their filing of a proof of claim in this case.

---

[3] It is well settled in this circuit that the Commonwealth of Puerto Rico "is protected by the Eleventh Amendment to the same extent as any state . . . ." Ortiz-Feliciano v. Toledo-Dávila, 175 F.3d 37, 39 (1st Cir. 1999).

[4] Section 106(a) states in part: "Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit . . . " 11 U.S.C.A. § 106(a) (West Supp. 2001).

The district court agreed with the bankruptcy court as to the invalidity of § 106(a),[5] but concluded that the waiver of immunity under § 106(b) was permissible because it was "premise[d] . . . upon an affirmative action by the state to take advantage of, and participate in, the bankruptcy process." In re Arecibo Cmty. Health Care, Inc., 233 B.R. 625, 630 (D.P.R. 1999). Appellants requested that the district court reconsider its ruling. While this request was pending, the Supreme Court decided College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board, 527 U.S. 666 (1999) (College Savings). The district court, without comment, declined to reconsider its ruling that § 106(b) was valid.

Appellants then brought their cause to this court by way of an interlocutory appeal.[6] In our initial decision we held that § 106(b) violates the Eleventh Amendment. See Arecibo Cmty. Health Care, Inc. v. Commonwealth of P.R., 244 F.3d 241, 245 (1st Cir. 2001). We construed § 106(b) to create a "constructive waiver" of a state's

---

[5] The parties to this appeal do not challenge the lower court's conclusion that Congress lacks the authority to abrogate Puerto Rico's Eleventh Amendment immunity pursuant to § 106(a). See In re Sacred Heart Hosp., 133 F.3d 237, 243 (3d Cir. 1998) (holding that § 106(a) is not a valid abrogation provision). But see In re Hood, 262 B.R. 412, 414 (6th Cir. BAP 2001) (holding that § 106(a) does not offend the Eleventh Amendment because Congress may validly abrogate a state's Eleventh Amendment immunity by legislating pursuant to the power to establish uniform bankruptcy laws, U.S. Const. art. I, § 8, cl. 4).

[6] "[P]retrial orders granting or denying Eleventh Amendment immunity [are] immediately appealable." Metcalf & Eddy v. Puerto Rico Aqueduct & Sewer Auth., 991 F.2d 935, 937 (1st Cir. 1993).

-6-

sovereign immunity.  Id.  Noting that the Supreme Court has recently found constructive waiver insufficient to defeat sovereign immunity, see College Savings, 527 U.S. at 680, we concluded that Congress could not condition a state's waiver of its Eleventh Amendment protection on its decision to engage in the lawful act of filing a claim with the bankruptcy court.  See Arecibo Cmty. Health Care, 244 F.3d at 245.

After we rendered our decision, ACHI ("appellee") and the United States moved for rehearing and rehearing en banc.  The panel agreed to rehear the case.

## II.  Analysis

### A.  Standard of review

Whether the district court correctly upheld the constitutionality of § 106(b) and found that appellants had waived their Eleventh Amendment immunity is an issue of law.  We therefore review the lower court's ruling de novo.  See Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth., 991 F.2d 935, 938 (1st Cir. 1993).

### B.  Stare decisis

In WJM, Inc. v. Massachusetts Department of Public Welfare, 840 F.2d 996 (1st Cir. 1985), we held that a former Bankruptcy Code provision identical in all relevant respects to current § 106(b) was a permissible means of obtaining a state's waiver of sovereign immunity with respect to compulsory counterclaims arising from a proof of claim

filed with the bankruptcy court.[7] Id. at 1005.  The United States and appellee both argue that we are bound by this decision as a matter of stare decisis.

The principle that a ruling of law by a panel of this court is binding upon subsequent panels is "an integral component of our jurisprudence."  Stewart v. Dura Constr. Co., 230 F.3d 461, 467 (1st Cir. 2000).  Adherence to "our precedent-based system of justice places a premium on finality, stability, and certainty in the law . . . ."  Id. (citing Hubbard v. United States, 514 U.S. 695, 711 (1995)).  A departure from stare decisis must therefore be supported by some "special justification."  Dickerson v. United States, 530 U.S. 428, 443 (2000) (quoting United States v. I.B.M. Corp., 517 U.S. 843, 856 (1996)).

We have identified two circumstances in which a departure from stare decisis may be warranted.  The first arises when "[a]n existing panel decision may be undermined by controlling authority, subsequently announced, such as an opinion of the Supreme Court, an en banc opinion, or a statutory overruling."  Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995).  In the second circumstance,

---

[7] That provision, former section 106(a) of the Bankruptcy Code, stated: "A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose."  11 U.S.C.A. § 106(a) (1982) (superseded).

-8-

"[w]hen emergent Supreme Court case law calls into question a prior opinion of another court, that court should pause to consider its likely significance before giving effect to an earlier decision." Carpenters Local Union No. 26 v. U.S. Fidelity & Guar. Co., 215 F.3d 136, 141 (1st Cir. 2000).

In this case, appellants do not argue that the earlier decision in WJM has been directly overruled by subsequent controlling authority; rather, they contend that the Supreme Court's decision in College Savings provides intervening authority that, at the very least, requires this Court to revisit the soundness of WJM in light of recent jurisprudential developments.

In College Savings, the court addressed a private suit against an arm of the State of Florida for allegedly engaging in false and misleading advertising of its tuition prepayment plan in violation of § 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a) (1995).  The Trademark Remedy Clarification Act ("TRCA") amended the Lanham Act to provide that state entities "shall not be immune, under the eleventh amendment . . . from suit in Federal court . . .  for any violation under this Act," and that remedies shall be available against state entities "to the same extent as such remedies are available . . . in a suit against" non-state entities. Pub. L. 102-280, § 3(b), 106 Stat. 3567 (1992) (codified in 15 U.S.C.A. § 1122 (1995)).

Relying on the theory of "constructive waiver" announced in Parden v. Terminal Railway of the Alabama State Docks Department, 377 U.S. 184 (1964), the petitioners in College Savings argued that the TRCA placed the state on adequate notice that its unlawful conduct in interstate commerce would legitimately waive its Eleventh Amendment immunity from private suits for monetary damages under the Lanham Act. The court, however, rejected the petitioners' constructive waiver theory and overruled Parden. See College Savings, 527 U.S. at 680. The court reasoned that a constructive-waiver approach is fundamentally incompatible with its "cases requiring that a State's express waiver of sovereign immunity be unequivocal." Id. (citing Great N. Life Ins. Co. v. Read, 322 U.S. 47 (1944)). The court also recognized that allowing constructive waivers would, "as a practical matter, permit Congress to circumvent the antiabrogation holding of Seminole Tribe." Id. at 683.

Appellants in the present case contend that § 106(b) and the holding in WJM violate the central teaching of College Savings -- namely, that Congress may not smuggle an abrogation provision past the courts merely by dressing it up to notify a state that it will waive its Eleventh Amendment immunity by engaging in a certain activity. Cf. College Savings, 527 U.S. at 683 (noting that "[f]orced waiver and abrogation are not even different sides of the same coin -- they are the same side of the same coin"). WJM did not, however, rely explicitly on Parden in affirming the validity of the Bankruptcy Code's

waiver provision.[8] Nonetheless, certain language in the opinion --
particularly the numerous references to the "notice" provided by the
statute -- may reveal a soupçon of reliance on a constructive-waiver
approach. Compare WJM, 840 F.2d at 1003 ("The statute puts the state
on notice that if it chooses to enter the federal government's
exclusive bankruptcy preserve by filing a claim, it must pay a price:
a partial waiver of its sovereign immunity.") (footnote omitted) with
College Savings, 527 U.S. at 681 ("In [the constructive-waiver
situation], the most that can be said with certainty is that the State
has been put on notice that Congress intends to subject it to suits
brought by individuals. That is very far from concluding that the
State made an altogether voluntary decision to waive its immunity.")
(citations and quotations omitted). We must therefore undertake a more
searching analysis than the ordinary operation of stare decisis would
permit, inquiring whether the theory of waiver embodied by § 106(b)
remains sound in the wake of College Savings.

**C. Waiver of Eleventh Amendment immunity**

It has long been recognized that a state's sovereign immunity
is "a personal privilege which it may waive at pleasure."[9] Clark v.

---

[8] Indeed, then-Chief Judge Campbell noted in WJM that Parden was likely
ripe for a partial overruling by the Supreme Court. See 840 F.2d at
1002 n.6.

[9] A state's Eleventh Amendment immunity may also be abrogated by
congressional enactment, provided however that Congress expresses its
unequivocal intention to do so and acts pursuant to a valid grant of

<u>Barnard</u>, 108 U.S. 436, 447 (1883).  "The decision to waive that immunity, however, 'is altogether voluntary on the part of the sovereignty.'" <u>College Savings</u>, 527 U.S. at 675 (quoting <u>Beers</u> v. <u>Arkansas</u>, 61 U.S. (20 How.) 527, 529 (1858)).  Thus, the "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one."  <u>Atascadero State Hosp.</u> v. <u>Scanlon</u>, 473 U.S. 234, 241 (1985).

A state may waive its Eleventh Amendment immunity by making a "'clear declaration' that it intends to submit itself to the jurisdiction of the federal courts." <u>College Savings</u>, 527 U.S. at 676 (quoting <u>Read</u>, 322 U.S. at 54).  Such a declaration may be expressed, for example, in a state statute or constitutional provision.  However, in keeping with the Supreme Court's admonition that a state's consent to suit in federal court must be "stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction," <u>Edelman</u> v. <u>Jordan</u>, 415 U.S. 651, 673 (1974) (quotations omitted), we have held that "'in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the state's intention to subject itself to suit in federal court.'"  <u>Acevedo López</u> v. <u>Police</u>

---

constitutional authority.  <u>See</u> <u>Laro</u> v. <u>New Hampshire</u>, 259 F.3d 1, 5 (1st Cir. 2001) (quoting <u>Board of Trs. of the Univ. of Ala.</u> v. <u>Garrett</u>, 531 U.S. 356, ---, 121 S. Ct. 955, 962 (2001)).

<u>Dep't of P.R.</u>, 247 F.3d 26, 28 (1st Cir. 2001) (quoting <u>Atascadero State Hosp.</u>, 473 U.S. at 241).

Similarly, a state may also explicitly waive the protections of the Eleventh Amendment by choosing to participate in a federal program for which waiver of immunity is a stated condition. <u>See</u> <u>Mills v. Maine</u>, 118 F.3d 37, 50 (1st Cir. 1997) (citing <u>Atascadero State Hosp.</u>, 474 U.S. at 241); <u>Alden</u> v. <u>Maine</u>, 527 U.S. 706, 755 (1999) ("Nor, subject to constitutional limitations, does the Federal Government lack the authority or means to seek the States' voluntary consent to private suits.") (citing <u>South Dakota</u> v. <u>Dole</u>, 483 U.S. 203 (1987)). Mere participation by a state in a federal program does not, however, establish the state's consent to be sued in federal court; the state's decision to waive its immunity as a condition of participating in the federal program also requires "'express language or . . . such overwhelming implications from the text as [will] leave no room for any other reasonable construction . . . . '" <u>Fla. Dep't of Health & Rehabilitative Servs.</u> v. <u>Fla. Nursing Home Ass'n</u>, 450 U.S. 147, 150 (1981) (per curiam) (quoting <u>Edelman</u>, 415 U.S. at 673).

Lastly, a state may waive its immunity through its affirmative conduct in litigation.[10] <u>See</u> <u>Paul N. Howard Co.</u> v. <u>Puerto</u>

---

[10] A state official may only waive the state's sovereign immunity during the course of litigation where specifically authorized to do so by that state's constitution, statutes, or decisions. <u>See</u> <u>Ford Motor Co.</u> v. <u>Dep't of Treasury</u>, 323 U.S. 459, 469 (1945) (holding that state official lacked authorization to voluntarily waive the state's Eleventh

-13-

Rico Aqueduct & Sewer Auth., 744 F.2d 880, 886 (1st Cir. 1984). Most pertinent to the issue faced here is the maxim that a federal court "will find a waiver . . . if the State voluntarily invokes [its] jurisdiction . . . ." College Savings, 527 U.S. at 675-76 (citing Gunter v. Atlantic Coast Line Ry. Co., 200 U.S. 273, 284 (1906)). See also Clark, 108 U.S. at 447-48 (holding that state waived its Eleventh Amendment immunity by intervening in a federal case as a claimant of a fund).

In Gardner v. New Jersey, 329 U.S. 565 (1947), the Supreme Court held that a state's sovereign immunity did not bar a debtor from asserting defensive objections to a proof of claim filed by the state in a bankruptcy proceeding. The court reasoned:

> he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure . . . . When the State becomes the actor and files a claim against the fund, it waives any immunity which it otherwise might have had respecting the adjudication of the claim.

Id. at 573-74. In College Savings, the Supreme Court affirmed the vitality of the Gardner rule, stating: "[Gardner], which held that a bankruptcy court can entertain a trustee's objections to a claim filed by a State, stands for the unremarkable proposition that a State waives

---

Amendment immunity). On appeal, the Commonwealth has not pressed the argument that its officials lacked the authority under the laws of Puerto Rico to waive the protections of the Eleventh Amendment in a bankruptcy proceeding.

its sovereign immunity by voluntarily invoking the jurisdiction of the federal courts." 527 U.S. at 681 n.3. This is a broad proposition, going beyond the precise holding of Gardner.[11] We would not lightly confine its meaning to the example cited.

Despite its express approval of Gardner's waiver principle, appellants read College Savings to require us to hold that WJM has become constitutionally untenable and that § 106(b) must be invalidated. Appellants note the court's remark that: "[W]e think where the constitutionally guaranteed protection of the States' sovereign immunity is involved, the point of coercion is automatically passed -- and the voluntariness of waiver destroyed -- when what is attached to the refusal to waive is the exclusion of the State from otherwise lawful activity." College Savings, 527 U.S. at 687. Using this statement as their springboard, appellants urge upon us the premise that the filing of a proof of claim with the federal bankruptcy court is "otherwise lawful activity" that is no different from the activity the court in College Savings held to be insufficient for waiver, namely, "the voluntary and nonessential activity of selling and

---

[11] Indeed, the court in College Savings could have limited the import of Gardner by characterizing it as a decision that does not implicate the Eleventh Amendment at all. That is, it could have stated that the defensive objection to the state's proof of claim at issue in Gardner was simply not a "suit . . . commenced or prosecuted against . . . [a] State" within the meaning of the Eleventh Amendment. Cf. Gardner, 329 U.S. at 573-74 ("If the claimant is a State, the procedure of proof and allowance is not transmuted into a suit against the State because the court entertains objections to the claim.").

advertising a for-profit educational investment vehicle in interstate commerce . . . ." Id. at 680. If this premise holds true, appellants argue, § 106(b) must be ruled unconstitutional.

We do not accept appellants' contention that no relevant difference exists between engaging in commercial activity and filing a proof of claim in a federal bankruptcy court. Although it is certainly "lawful" for a state to file a proof of claim, we believe that calling upon a federal court's jurisdiction is fundamentally different, for purposes of the Eleventh Amendment, from merely conducting commercial activity. The Supreme Court itself recognized in College Savings that a state relinquishes its immunity under the Eleventh Amendment "if [it] voluntarily invokes [the] jurisdiction [of the federal courts]. . . ." Id. at 675-76. Indeed, the court found this proposition to be so well established as to be "unremarkable." Id. at 681 n.3 (citing Gardner v. New Jersey, 329 U.S. 565 (1947)). Cf. New York v. Irving Trust Co., 288 U.S. 329, 333 (1933) ("If a state desires to participate in the assets of a bankrupt, she must submit to appropriate requirements by the controlling power . . . .").

The conclusion that a state's filing of a proof of claim may validly effect a partial waiver of its sovereign immunity is further buttressed by those cases which hold that other constitutional rights

are considered to be waived by the same mechanism.[12] For example, an individual who files a proof of claim with the bankruptcy court waives his Seventh Amendment right to a jury trial for a related preference action brought by the debtor. See Langenkamp v. Culp, 498 U.S. 42, 44 (1990); see also Katchen v. Landy, 382 U.S. 323, 336-37 (1966) (holding that although creditor might be entitled to a jury trial on the preference issue if he presented no claim in the bankruptcy proceeding and awaited plenary suit by the trustee, he is not so entitled when the issue arises as part of the processing of his claims in the bankruptcy proceedings). Similarly, the filing of a proof of claim waives an individual's due process right to insist on minimum contacts within the forum state before being subject to the court's jurisdiction.[13] See In re PNP Holdings Corp., 99 F.3d 910, 911 (9th Cir. 1996) (per curiam).

---

[12] By contrast, in College Savings the court noted that the constructive-waiver mechanism rejected in that case is "simply unheard of in the context of other constitutionally protected privileges." 527 U.S. at 681.

[13] This is not to say that an entity filing a claim with the bankruptcy court must forfeit the entire panoply of constitutional rights. Yet, even if this were a case of waiver by a state's participation in a federal program (as in the second category of waiver noted above), it would not be impermissible under the Eleventh Amendment. Cf. Dole, 483 U.S. at 211 (noting that "in some circumstances the . . . inducement offered by Congress might be so coercive as to pass the point at which pressure turns into compulsion") (citation and quotations omitted). The state, which might otherwise recover nothing from an insolvent debtor, receives a substantial benefit in exchange for its partial waiver of sovereign immunity. Thus, we think the quid pro quo for the State's waiver of immunity is not so coercive as to raise constitutional concerns.

In sum, we do not read § 106(b) to rely on the now discredited theory of constructive waiver. Instead, that provision draws on the well-established principle of equity that a state waives its Eleventh Amendment immunity by availing itself of the jurisdiction of the federal courts.

**D.  Scope of waiver**

Appellants also argue that, even if the waiver principle of Gardner remains sound, the scope of waiver permitted in Gardner represents the very outer limits of constitutionality. See Gardner, 329 U.S. 573-74 ("If the claimant is a State, the procedure of proof and allowance is not transmuted into a suit against the State because the court entertains objections to the claim . . . . No judgment is sought against the State."). In other words, appellants theorize that any waiver that would permit an affirmative recovery from the state's coffers would exceed the boundaries of the Eleventh Amendment.

Yet, to the extent we are asked to determine whether § 106(b) permissibly waives a state's immunity only with regard to defensive counterclaims for recoupment, or whether that provision may be applied, as written, to allow for a broader affirmative recovery from the state, we believe both that the precedential effect of WJM is decisive on this issue and that, in any event, allowance of a broader affirmative recovery is the legally and constitutionally appropriate way to construe the scope of this waiver.

-18-

Nothing in College Savings purports to restrict the constitutionally permissible scope of waiver triggered by the state's invocation of the jurisdiction of a federal court. Cf. 527 U.S. at 676 ("Nor is this a case in which the State has affirmatively invoked our jurisdiction."). If anything, College Savings affirms and reinforces the notion that a broad waiver of immunity may be premised on a state's unequivocal conduct demonstrating its willingness to submit to the jurisdiction of a federal court. See id. at 675-76, 681 n.3 (waiving immunity by affirmatively invoking the jurisdiction of the federal courts); id. at 687-88 (voluntarily waiving immunity as a condition of participating in federal programs). Although the scope of waiver found constitutional in Gardner and affirmed in College Savings was limited to recoupment -- and thus narrower in scope than § 106(b) -- nothing in either decision explicitly precludes a broader rule of waiver. See In re Lazar, 237 F.3d 967, 979 (9th Cir. 2001), petition for cert. filed, 70 U.S.L.W. 3090 (U.S. July, 19, 2001) (No. 01-128); see also Richard H. Fallon et al., Hart and Wechsler's The Federal Courts and the Federal System 123-24 (4th ed. Supp. 2000) (suggesting that when a state voluntarily invokes federal jurisdiction, the permissible extent of the state's Eleventh Amendment waiver may go beyond the bounds of Gardner); Teresa K. Goebel, Comment, Obtaining Jurisdiction over States in Bankruptcy Proceedings after Seminole Tribe, 65 U. Chi. L. Rev. 911, 925 (1998) ("The Gardner Court held that the defensive counterclaim

-19-

rule was constitutional, but did not foreclose the possibility that a broader test may be constitutional.") (footnotes omitted).

The language of § 106(b) itself provides for a waiver of all claims arising out of the same transaction or occurrence as the state's claim. This language creates a waiver, the scope of which is essentially similar to compulsory counterclaims under the Federal Rules. See Fed. R. Civ. P. 13(a); cf. Fed. R. Civ. P. 13(c) (stating that a counterclaim "may claim relief exceeding in amount or different in kind from that sought n the pleading of the opposing party"). Where a state avails itself of the federal courts to protect a claim, we think it reasonable to consider that action to waive the state's immunity with respect to that claim in toto and, therefore, to construe that waiver to encompass compulsory counterclaims, even though they could require affirmative recovery from the state. The alternative approach would have the unfortunate effect of preventing the complete adjudication of the claim in a single forum, undermining the principles that led the framers of the Federal Rules to compel the litigation of certain counterclaims as a part of a single lawsuit.

Recent cases from our sister circuits lend further support to WJM and our conclusion here that § 106(b) validly waives a state's Eleventh Amendment immunity with respect to the full amount of any compulsory counterclaims. In In re Straight, 143 F.3d 1387 (10th Cir. 1998), the Tenth Circuit held that § 106(b) permissibly waived the

state's Eleventh Amendment immunity with respect to compulsory counterclaims arising from the state's proof of claim. As the court stated, § 106(b) "does not pretend to abrogate a state's immunity, it merely codifies an existing equitable circumstance under which a state can choose to preserve its immunity by not participating in a bankruptcy proceeding or to partially waive that immunity by filing a claim." Id. at 1392. Similarly, the Fourth Circuit has held that "to the extent a [debtor]'s assertions in a state-instituted federal action, including those made with regard to a state-filed proof of claim in a bankruptcy action, amount to a compulsory counterclaim, a state has waived any Eleventh Amendment immunity against that counterclaim in order to avail itself of the federal forum." In re Creative Goldsmiths, Inc., 119 F.3d 1140, 1148 (4th Cir. 1997).[14] And in a decision that is only somewhat more vintage, the Second Circuit held that former § 106(a) of the Bankruptcy Code (the same waiver provision we addressed in WJM) validly waived a state's sovereign immunity with respect to compulsory counterclaims arising from the same transaction or occurrence as was the subject of the state's proof of

_____

[14] Although the Fourth Circuit upheld the substance of § 106(b), it stated in dictum that: "While 11 U.S.C. § 106(b) may correctly describe those actions that, as a matter of constitutional law, constitute a state's waiver of the Eleventh Amendment, it is nevertheless not within Congress' power to abrogate such immunity by 'deeming' a waiver." See In re Creative Goldsmiths, 119 F.3d at 1147. Whether Congress lacks the authority to use certain language in codifying an existing principle of waiver is not a question that would alter the outcome of this case. We therefore need not address it.

claim.  See In re 995 Fifth Ave. Assoc., L.P., 963 F.2d 503, 509 (2d

Cir. 1992).[15]

We recognize that our conclusion here presents a state with

something of a Hobson's choice: "either subject yourself to federal

court jurisdiction or take nothing." Texas ex rel. Bd. of Regents of

Univ. of Tex. v. Walker, 142 F.3d 813, 822 (5th Cir. 1998).  If the

state chooses to file a proof of claim with the court, it exposes

itself to liability arising from a compulsory counterclaim; if it

declines to file a proof of claim, it will be permanently barred from

collecting its debt or, for that matter, collecting a pro rata share of

the bankruptcy estate.  Even the Eleventh Amendment, however, does not

---

[15] Consistent with Gardner, several circuits have recognized that a
state's decision to invoke the bankruptcy court's jurisdiction will
effect some waiver of Eleventh Amendment immunity.  With the exception
of the Seventh Circuit, however, those courts have yet to decide
whether the scope of waiver extends to counterclaims that would permit
affirmative recovery against the state.  But cf. In re Friendship
Medical Center, Ltd., 710 F.2d 1297, 1301 (7th Cir. 1983) (holding that
scope of waiver extends only to counterclaims in the nature of offset
or recoupment).  We find nothing in the language of the decisions of
the Ninth, Eighth, or Eleventh Circuits that would be incompatible with
our decision here or our prior holding in WJM.  See, e.g., In re Lazar,
237 F.3d at 978 ("[W]hen a state or an 'arm of the state' files a proof
of claim in a bankruptcy proceeding, the state waives its Eleventh
Amendment immunity with regard to the bankruptcy estate's claims that
arise from the same transaction or occurrence as the state's claim.");
In re Rose, 187 F.3d 926, 930 (8th Cir. 1999) ("[The Missouri state
agency's] submission of proofs of claims in [the debtor's] bankruptcy
case waived its immunity in related proceedings required to adjudicate
the dischargeability of those claims."); In re Burke, 146 F.3d 1313,
1319 (11th Cir. 1998) ("[B]y filing a proof of claim in the debtors'
respective bankruptcy proceedings, the State waived its sovereign
immunity for the purposes of the adjudication of those claims.").

ensure a state the choice of a desirable alternative. See WJM, 840 F.2d at 1004-05 ("[A]n effective waiver [of Eleventh Amendment immunity] . . . may occur even when the waiving party is between a rock and a hard place.") (citations omitted). As with any case of a knowing and intelligent waiver of rights, the state has the option (however unattractive that option may be) of determining whether the potential benefit from waiving its immunity will exceed the potential liability. If the state expects participation in the bankruptcy to yield a net gain, it may file a claim and waive its immunity with respect to certain counterclaims. Conversely, if the state expects its participation to yield a net loss, it may forego the bankruptcy proceedings and retain its immunity from suit. The unfairness the state may face in being forced into making this election is certainly no greater than that faced by any creditor who must decide whether to forego certain constitutional protections by submitting to the bankruptcy proceedings.

Moreover, we believe any potential unfairness resulting from a state having to waive its immunity as a prerequisite for participation in the bankruptcy proceedings is placed in perspective by recognizing the concrete unfairness that a contrary rule would impose on the other bankruptcy creditors, whose pro rata share of the bankruptcy estate would be diminished because the estate cannot obtain the full amount of debt owed to it by the state. "[T]he law of

bankruptcy is founded upon principles of equity.  That foundation requires all persons or entities in the same class must be treated alike.  Thus, creditors coming to the bankruptcy court for relief expect they will fare no better or no worse than others of their stature."  In re Straight, 143 F.3d at 1389.

### III.  Conclusion

For the reasons stated above, we **VACATE** our prior panel decision and **AFFIRM** the ruling of the district court.  This matter is remanded to the district court for further proceedings consistent with this opinion.