In re Jerry C. HARLESTON and Donna Harleston, Debtors.

State of California, State Board of Equalization, Appellant,

v.

Jerry C. Harleston and Donna L. Harleston, Appellees.

BAP Nos. CC–01–1417–BKMa.
Bankruptcy No. LA 98–14264 VZ.
Adversary No. LA–01–01905.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 24, 2002.

Filed March 25, 2002.

Herbert A. Levin, Deputy Attorney General, State of California Department of Justice, Los Angeles, CA, for State of California Board of Equalization.

Naomi R. Bernstein, Bernstein Law Corporation, Rancho Cucamonga, CA, for Jerry and Donna Harleston.

Before BRANDT, KLEIN, and MARLAR, Bankruptcy Judges.

## OPINION

BRANDT, Bankruptcy Judge.

Debtors filed an adversary proceeding against the California Board of Equalization ("Board") seeking a declaration that their debt to the Board was discharged in their chapter 7[1] proceeding. The bankruptcy court denied the Board's motion for judgment on the pleadings based on sovereign immunity. Holding that the adversary proceeding is ancillary to the case in which the Board waived its immunity by filing a proof of claim, and that it arises out of the same operative facts as the claim, we AFFIRM.

## I. FACTS

Appellee Debtors Jerry C. and Donna L. Harleston filed a chapter 13 petition in February of 1998. The bankruptcy court converted the case to chapter 7 in March of 1999 and entered a discharge order on 30 June 1999. Prior to conversion, the Board filed a proof of claim, alleging a fully secured debt. Harlestons objected, asserting the debt was unsecured. The bankruptcy court entered an agreed order (the "order") stating that the claim was not a priority claim under § 507(a)(8), and set an evidentiary hearing to determine the extent of the claim's secured status. The court apparently struck that hearing for want of prosecution after the conversion to chapter 7.

After entry of the discharge, the Board commenced collection proceedings, and on or about 1 May 2001 it sent an earnings withholding order to Jerry Harleston's employer.

Soon thereafter, the bankruptcy court reopened the case on Harlestons' motion, and they filed a complaint alleging: that the Board asserts "that the debt is nondischargeable pursuant to section 523(a)(1)(C) [which provides that debts arising from taxes that a debtor willfully attempts to evade or defeat are not discharged]; that the order is not res judicata to the issue of dischargeability; and that the priority of [the Board's] claim does not effect [sic] the dischargeability of the taxes." In addition to attorneys' fees and costs, Harlestons prayed for:

1. An order that the BOARD's claim is not a priority claim is the same as an order that the debt is dischargeable;

2. The ORDER is res judicata to the issue of dischargeability of the debt; [and that]

3. The Harleston's [sic] debt to the BOARD has been discharged.

---

**1.** Absent contrary indication, all section and chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330. All "Rule" references are to the Federal Rules of Bankruptcy Procedure.

The Board answered by asserting that the Eleventh Amendment to the United States Constitution jurisdictionally barred the adversary proceeding, and moved for judgment on the pleadings. The bankruptcy court denied the motion on 16 August 2001, and this interlocutory appeal followed. We granted leave to appeal, 28 U.S.C. § 158(a)(3), for the limited purpose of considering sovereign immunity.

## II.  JURISDICTION

■ The bankruptcy court had jurisdiction to determine its own jurisdiction, *Visioneering Constr. and Dev. Co. v. United States Fid. & Guar. (In re Visioneering Constr.)*, 661 F.2d 119, 122 (9th Cir.1981) (citing *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376–77, 60 S.Ct. 317, 84 L.Ed. 329 (1940)), and we do under 28 U.S.C. § 158(c) and pursuant to the collateral order doctrine, in so far as the issue being appealed is the bankruptcy court's determination that Eleventh Amendment immunity does not apply. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

## III.  ISSUE

Whether the Board's waiver of its sovereign immunity by filing a proof of claim in the bankruptcy case extends to Harlestons' adversary proceeding.

## IV.  STANDARD OF REVIEW

■ Immunity under the Eleventh Amendment and whether a complaint states a claim are questions of law which we review de novo. *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 838 (9th Cir.1997); *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir.2000).

## V.  DISCUSSION

### A.  *Eleventh Amendment Immunity*

States are generally immune from private suits against them in federal courts. *See generally In re NVR L.P.*, 206 B.R. 831, 848 (Bankr.E.D.Va.1997) discussing history of state sovereign immunity; ruling affirmed, reversed, and vacated in part, *see* 189 F.3d 442 (4th Cir.1999). The Eleventh Amendment to the United States Constitution provides that the "[j]udicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const.Amend. XI. Moreover, sovereign immunity bars suits in federal court against a state by its own citizens. *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The parties here agree that the Board is a state agency entitled to assert immunity. *See Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 684, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982); *Natural Res. Def. Council v. California Dep't of Transp.*, 96 F.3d 420, 421 (9th Cir.1996).

■ Congress may abrogate sovereign immunity, if it does so expressly in a valid exercise of its power. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). In addition, although Eleventh Amendment immunity is in the nature of a jurisdictional bar, it does not implicate a federal court's jurisdiction in any ordinary sense, and thus may be forfeited by a state's failure to assert it, or may be waived. *Armstrong v. Davis*, 275 F.3d 849, 877 (9th Cir.2001).

■ Congress purported in § 106(a) to abrogate sovereign immunity respecting several provisions of the Bankruptcy Code,

but application of that provision to the states is unconstitutional pursuant to *Seminole Tribe*. *Mitchell v. California Franchise Tax Bd. (In re Mitchell)*, 209 F.3d 1111, 1119 (9th Cir.2000). *See also Franchise Tax Bd. v. Lapin (In re Lapin)*, 226 B.R. 637, 643–44 (9th Cir. BAP 1998); *Elias v. United States (In re Elias)*, 218 B.R. 80, 83–86 (9th Cir. BAP 1998). *But see Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 853 n. 6 (9th Cir.2001) (holding *Mitchell's* analysis of the possibility of abrogation under the Fourteen Amendment superceded) and *Bliemeister v. Indus. Comm'n of Arizona (In re Bliemeister)*, 251 B.R. 383, 391–92 (Bankr.D.Ariz.2000) (holding that the Federal Constitution abrogated state sovereign immunity with respect to bankruptcy issues).

■ A state may waive its sovereign immunity by filing a proof of claim. Under § 106(b), a governmental unit that files a proof of claim in a bankruptcy case waives sovereign immunity "with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose." The Board argues that this provision is unconstitutional, relying on *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999), in which the Supreme Court held that certain provisions of the Lanham Act amounted to a constitutionally impermissible constructive waiver of the states' sovereign immunity, and *Arecibo Cmty. Health Care, Inc. v. Puerto Rico*, 244 F.3d 241 (1st Cir.2001), which extended the reasoning of *College Savings* to § 106(b). We note that, after the Board's submission of its opening brief in this appeal, the First Circuit reversed *Arecibo* on rehearing, 270 F.3d 17 (1st Cir.2001).

We need not determine the constitutionality of § 106(b) here, as the Board concedes that, under *Gardner v. New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947), a state may waive sovereign immunity by filing a proof of claim in a bankruptcy case. *See College Sav. Bank*, 527 U.S. at 681 n. 3, 119 S.Ct. 2219; *Schulman v. California (In re Lazar)*, 237 F.3d 967, 978 (9th Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 458, 151 L.Ed.2d 377 (2001) (holding that, independent of § 106(b), when a state files a proof of claim in a bankruptcy proceeding, it waives its Eleventh Amendment immunity with regard to the estate's claims that arise from the same transaction or occurrence as the state's claim).

■ The crux of the Board's argument is that, although it waived sovereign immunity by filing its proof of claim, it did so only with respect to adjudication of the claim, and that its waiver does not extend to the Harlestons' adversary (dischargeability) proceeding against it.

## B. *The Board's Counterclaim Analogy*

The Board analogizes a proof of claim to a complaint. It reasons that a claim objection is the equivalent of an answer, and an adversary proceeding such as the one we now consider is a counterclaim, citing *Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir.1995), and *Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 552 (5th Cir. 1985), and *In re 20/20 Sport, Inc.*, 200 B.R. 972, 978 (Bankr.S.D.N.Y.1996). However, the argument goes, a sovereign does not, by filing a complaint, waive its immunity from affirmative relief for the defendant by counterclaim, but only allows the defendant to defeat or diminish the sovereign's claim, citing, *inter alia, Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509–10, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991),

*United States v. Shaw,* 309 U.S. 495, 500–05, 60 S.Ct. 659, 84 L.Ed. 888 (1940), and *Chemehuevi Indian Tribe v. California State Bd. of Equalization,* 757 F.2d 1047, 1053 (9th Cir.1985), *rev'd on other grounds,* 474 U.S. 9, 106 S.Ct. 289, 88 L.Ed.2d 9 (1985). Thus, the Board urges that its waiver was limited to the relief it sought in the claims resolution process, and that this adversary proceeding "for affirmative relief" is beyond its bounds.

We disagree, and hold that the Board's waiver extends to the Harlestons' adversary proceeding because the determination of dischargeability is ancillary to the discharge order, which is inseparably tied to the claims adjudication process, and bankruptcy courts retain jurisdiction over ancillary suits to enforce the discharge order. Alternatively, the Board's waiver extends to the adversary proceeding under the "logical relationship" test adopted by the Ninth Circuit in *Pinkstaff v. United States (In re Pinkstaff),* 974 F.2d 113 (9th Cir. 1992).

## C. *Inseparability of Discharge from Claims Adjudication*

In *Gardner v. New Jersey,* 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947), the Supreme Court, deciding that bankruptcy jurisdiction existed to determine the amount of a state's claim and the priority of its lien, stated that

> [w]hen a State files a proof of claim in the reorganization court, it is using a traditional method of collecting a debt....

> It is traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure. If the claimant is a State, the procedure of proof and allowance is not transmuted into a suit against the State because the

court entertains objections to the claim. The State is seeking something from the debtor. No judgment is sought against the State. The whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a res. It is none the less such because the claim is rejected in toto, reduced in part, given a priority inferior to that claimed, or satisfied in some way other than payment in cash. When the State becomes the actor and files a claim against the fund, it waives any immunity which it otherwise might have had respecting the adjudication of the claim.

*Gardner,* 329 U.S. at 573–74, 67 S.Ct. 467 (citing *Wiswall v. Campbell,* 93 U.S. 347, 351, 23 L.Ed. 923 (1876); additional citations omitted).

The Board would use this language to limit the waiver from its filing of the proof of claim to a determination of the nature of its claim and the extent of its participation in the distribution of the estate. But *Gardner* goes further: it recognizes that claims allowance is part of the larger process of bankruptcy administration, the goals of which are either liquidation or reorganization. 329 U.S. at 573, 67 S.Ct. 467.

The essence of the bankruptcy case is the conversion of legal claims for payment into equitable shares in the distribution of estate assets. The discharge is integral to that process. In interpreting the Bankruptcy Act of 1867, the Supreme Court stated in *Wiswall,* 93 U.S. at 350, which *Gardner* cites, that "Congress, in enacting the bankrupt law, had apparently in view, (1) the discharge, under some circumstances, of an honest debtor from legal liability for debts he could not pay; and (2) an early pro rata distribution, according to equity, of his available assets among his several creditors." *See also Katchen v.*

*Landy,* 382 U.S. 323, 336, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) (holding that the Bankruptcy Act (superceded by the Bankruptcy Code) converts the creditor's legal claim into an equitable claim to a pro rata share of the res, citing *Gardner,* 329 U.S. at 573–574, 67 S.Ct. 467).

Among the consequences of the bankruptcy process, first on the *Wiswall* list, and arguably the paramount concern of individual debtors, is the discharge. Conversion of a legal claim to an equitable interest in the estate's res would be incomplete without releasing debtors from personal liability (save those instances in which no discharge obtains, *see* § 727(a)).

■ For a sovereign, as for any other creditor, participation in the bankruptcy process is merely a means to collect a debt. Discharge *is* no less integral to that process than claim adjudication: when a state submits a proof of claim, in addition to waiving its immunity as to adjudication of its interest in the res of the estate, it *necessarily* waives immunity with respect to determination of its rights against the debtors. As the passage in *Wiswall* to which *Gardner* apparently refers states:

> Every person submitting himself to the jurisdiction of the bankrupt court in the progress of the cause, for the purpose of having his rights in the estate determined, makes himself a party to the suit, and is bound by what is judicially determined in the legitimate course of the proceeding. A creditor who offers proof of his claim, and demands its allowance, subjects himself to the dominion of the court, and must abide the consequences.

*Wiswall,* 93 U.S. at 351.

### D. *Ancillary Suit*

This examination of the nature of the bankruptcy case suffices to defeat the Board's argument that Harlestons' suit is analogous to a counterclaim. While it is true that the bankruptcy court may confront new issues in the dischargeability action, Harlestons are not raising them. Harlestons merely seek a determination that the court discharged their debt to the Board. Such relief is neither new, since the discharge has already issued, nor affirmative, since Harlestons seek no set-off or recoupment. Thus, the Board's counterclaim analogy is inapt. Rather, the dischargeability action is dependent on the bankruptcy case; no discharge—and thus no question of dischargeability—could have existed apart from it. *See Local Loan Co. v. Hunt,* 292 U.S. 234, 239, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) (holding that a dischargeability action brought before a bankruptcy court amounts to a supplemental and ancillary bill in equity "in aid of and to effectuate the adjudication and order made by the same court," and that a bankruptcy court has inherent jurisdiction "of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein . . . .").

■ The flaw in the Board's argument is its failure to recognize that when a state waives immunity as to one action, its waiver extends to ancillary suits to enforce orders entered in that action. In *Gunter v. Atl. Coast Line R.R. Co.,* 200 U.S. 273, 26 S.Ct. 252, 50 L.Ed. 477 (1906), the Court considered whether its prior decision affirming a decree enjoining South Carolina from collecting taxes, in an action in which the state had waived its sovereign immunity, still bound the state from collecting the taxes. The Court rejected the state's assertion that sovereign immunity barred a new injunction, holding that "the proposition that the Eleventh Amendment . . . control[s] a court of the United States in administering relief, although the court

was acting in a matter ancillary to a decree rendered in a cause over which it had jurisdiction, is not open for discussion." *Id.* at 292, 26 S.Ct. 252. By the same reasoning, the bankruptcy court here retains jurisdiction to adjudge the extent of its discharge order. *See Beneficial Trust Deeds v. Franklin (In re Franklin),* 802 F.2d 324, 326 (9th Cir.1986) ("[B]ankruptcy courts must retain jurisdiction to construe their own orders if they are to be capable of monitoring whether those orders are ultimately executed in the intended manner."). Thus, there is no lack of an "express" waiver, or any requirement for a new waiver: the waiver stems from the Board's filing of its proof of claim, "conduct that is incompatible with an intent to preserve ... immunity." *Hill v. Blind Indus. and Servs. of Md.,* 179 F.3d 754, 758 (9th Cir.1999), *amended by* 201 F.3d 1186 (9th Cir.2000).

### E. Substance versus Procedure

The procedural trappings of this adversary proceeding—a complaint naming the Board as defendant, a summons, and a potential judgment—might seem to mark the proceeding as a suit against the state. *See Virginia v. Collins (In re Collins),* 173 F.3d 924, 927–31 (4th Cir.1999) (distinguishing between a bankruptcy court dischargeability determination upon reopening a case from one in the adversary proceeding context, but without addressing Rule 7001's requirement for an adversary proceeding). A new suit, argues the Board, requires new consent; otherwise, it is a forbidden "forced waiver."

We note that *Gardner* involved a determination of lien priority, which would today require an adversary proceeding. Rule 7001(2). We also see no reason why the procedural requirement of a discrete caption and a separate number would require a different result or be a "forced waiver" à la *College Savings,* as the Board (and *Collins* ) reason: the subject matter, the dischargeability of Harlestons' tax obligation, and its dependence on the discharge order, remains the same.

### F. "Logical Relationship" Test

Even were we to embrace the Board's claim-counterclaim analogy, the logical relationship test adopted by the Ninth Circuit would compel the conclusion that the Board waived sovereign immunity in the adversary proceeding by filing its proof of claim. In *Pinkstaff,* 974 F.2d at 115–16, the Circuit held under section 106(b)[2] that the IRS's proof of claim waiver of sovereign immunity extended to a bankruptcy court action under § 362(h) to determine whether the government had violated the automatic stay, because it arose "from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant," quoting *United States v. Bulson (In re Bulson),* 117 B.R. 537, 541 (9th Cir. BAP 1990), *aff'd,* 974 F.2d 1341, 1992 WL 212174 (9th Cir.1992) (*table* decision). *Pinkstaff* adopted *Bulson's* holding that

> the IRS's claim against the debtor[s] arises from the debtor[s'] failure to pay taxes owed. The debtor[s'] claim arises pursuant to the attempt by the IRS to collect these taxes owed by the debtor. The basis of both cases revolve around the aggregate core of facts regarding the debtor's unpaid taxes. Therefore, we find that under these circumstances the essential facts relating to the tax

claim itself are logically related to the government's collection activities.

*Pinkstaff,* 974 F.2d at 115.

Under this analysis, both the Board's claim for unpaid taxes and the Harlestons' dischargeability claim revolve around the same aggregate core of facts and are logically related: thus, the Board's proof of claim waiver extends to the adversary proceeding.

Although *Pinkstaff* and *Bulson* predate *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), and *College Savings,* the Circuit recently employed the *Pinkstaff–Bulson* "logical relationship" test in *Lazar* without relying on § 106(b). This analysis has also been utilized post-*Seminole* in other circuits. *See Georgia Dep't of Revenue v. Burke (In re Burke)* 146 F.3d 1313 (11th Cir.1998) (using this same analysis, along with an expansive reading of *Gardner,* to come to the same conclusion and citing *Pinkstaff* at note 10); *Rose v. United States Dep't of Educ. (In re Rose),* 187 F.3d 926 (8th Cir.1999) (employing similar reasoning to hold that a proof of claim waiver sufficed to establish jurisdiction in a subsequent student loan dischargeability action and stating that the bankruptcy court's claim adjudication and discharge processes were both related to the scope and status of the sovereign's claim, and that the Code makes clear that these processes are both part of a larger whole). *See also California Franchise Tax Bd. v. Jackson (In re Jackson),* 184 F.3d 1046, 1050 (9th Cir.1999) (stating that it was following the lead of the Eleventh Circuit to hold that, despite intervening case law, a state's proof of claim in a bankruptcy case waived its sovereign immunity; we note that *Jackson* disallowed a claim because the debt had been discharged in a previous bankruptcy, *see California Franchise Tax Bd. v. Jackson (In re Jackson),*

220 B.R. 683, 684–87 (C.D.Cal.1998), which may limit its precedential value).

### G. *Other Considerations*

We emphasize that the Board filed a proof of claim in the Harlestons' bankruptcy, which distinguishes this case from those in which the sovereign filed no proof of claim, *e.g., Mitchell, Lapin,* and *Elias.* In such cases, *Lapin* points the way for debtors: either file a dischargeability action in state court, if available, or proceed under *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which allows suits against state officials to enjoin violations of federal law. 226 B.R. at 646–47.

Further, as the Ninth Circuit has observed in *Goldberg v. Ellett (In re Ellett),* 254 F.3d 1135, 1149 (9th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 1064, 151 L.Ed.2d 968 (2002), the discharge itself operates via § 524(a)(2) to enjoin state officials from collecting discharged debts. As noted in the concurrence to our opinion, affirmed by the Circuit in *Ellett,* those officials

> collect on arguably discharged debts at their peril, and ... [face] the same choice as anyone else who's not sure an injunction bars his contemplated course of action: obtain a judicial determination from the issuing court first, or bear the consequences if in error. *Celotex Corp. v. Edwards,* 514 U.S. 300, 313, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). Further, adversary proceedings such as the one before us could go directly to the question of sanctions upon determination that the debt in question was, in fact, discharged.

*Goldberg v. Ellett (In re Ellett),* 243 B.R. 741, 747 (9th Cir. BAP 1999).

Finally, we note that *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502 (9th Cir. 2002), requires that enforcement of the

discharge injunction be by motion for contempt. *See* Rule 9020. The determinations Harlestons seek in their adversary proceeding are the factual predicates for such a motion. Arguably those determinations could be made without a separate adversary proceeding, as the substantive question is whether the debt is within the discharge already granted, rather than whether it is dischargeable per se. Suffice it to say that we need not here delineate the precise boundary between Rules 7001 and 9020.

*Walls* also makes clear that Harlestons' prayer for an award of attorneys' fees in their adversary proceeding cannot succeed; we therefore need not address the possibility that that request would require a different Eleventh Amendment analysis (but do not mean to suggest attorneys' fees may not be available as a compensatory sanction).

## VI. CONCLUSION

The Board's proof of claim waived its sovereign immunity in Harlestons' bankruptcy case, and the bankruptcy court retained jurisdiction over matters ancillary to the discharge order in that case. The Harlestons' adversary proceeding to determine whether their debt to the Board was discharged is such a matter. Alternatively, the Harlestons' adversary proceeding is logically related to the adjudication of the Board's claim. Under either analysis, the Board's waiver extends to the Harlestons' adversary proceeding. We AFFIRM.