Donna Marie WALLS, on behalf of herself and all others similarly situated, Plaintiff–Appellant,

v.

WELLS FARGO BANK, N.A., Defendant–Appellee.

No. 00–17036

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 2001

Filed Jan. 8, 2002

Timothy J. Becker (argued) and Carleton B. Crutchfield, Mitsch & Crutchfield, St. Paul, Minnesota, for the plaintiff-appellant.

Jan T. Chilton (argued) and Mark D. Lonergan, Severson & Werson, San Francisco, California, for the defendant-appellee.

Before: KOZINSKI, RYMER, and SILVERMAN, Circuit Judges.

RYMER, Circuit Judge:

We are asked to imply a private right of action for a debtor discharged from bankruptcy to enforce an alleged violation of 11 U.S.C. § 524, which provides that discharge under Title 11 of the Bankruptcy Code operates as an injunction against collecting debt as a personal liability of the debtor.

Donna Marie Walls brought a class action on behalf of Chapter 7 bankruptcy debtors against Wells Fargo Bank for (among other things) violating the discharge injunction by attempting to collect her debt after it had been discharged. The district court concluded that the remedy Congress intended for violations of the discharge injunction is contempt pursuant to 11 U.S.C. § 105(a). *Walls v. Wells Fargo Bank, N.A.*, 255 B.R. 38 (E.D.Cal.2000). Accordingly, it referred Walls's claims for contempt to the bankruptcy court but dismissed her claims for relief under § 524. We agree, and hold that a private cause of action is not available under § 524, or through § 105.

This appeal also raises the issue whether a discharged debtor may pursue a simultaneous claim under the Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. § 1692f. We think not, as to do so would circumvent the Bankruptcy Code's remedial scheme. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

## I

Walls filed a voluntary bankruptcy petition under Chapter 7 of Title 11 of the United States Code on September 24, 1997. She listed a pre-petition obligation of $118,000 owed to Wells Fargo Bank, secured by her house. She continued to make payments, before and after her debt was discharged on January 2, 1998. This enabled Walls to keep the house under a "ride-through" allowed by *In re Parker*, 139 F.3d 668, 672–73 (9th Cir.1998), to debtors who are current on their loan payments on secured property and who continue to make payments. *Parker* permits such debtors to avoid making a statutory election whether to redeem the property or reaffirm the debt pursuant to § 524(c). This meant that Wells Fargo retained its lien on the property and could foreclose in the event that Walls did not make payments. Several payments later, Walls in fact stopped paying. Wells Fargo foreclosed on the house in December 1998. Walls then filed this class action in federal district court. No class has yet been certified.

Walls's complaint alleges that Well Fargo did not obtain an agreement reaffirming its debt under § 524(c) after she filed for bankruptcy, and that her debts were discharged giving rise to the discharge injunction pursuant to § 524(a)(2) and (c). Nevertheless, the bank continued to solicit and collect monthly payments, which she made on October 4, 1997, November 12, 1997, and December 7, 1997 before discharge but after the automatic stay, and on January 19, 1998, February 24, 1998, and May 9, 1998 after discharge. This activity, Walls alleges, was prohibited by § 524 and was an unfair and unconscionable means of collecting a debt under the FDCPA, 15 U.S.C. § 1692f. Wells Fargo moved to dismiss the claims for willful violation of the discharge injunction and the FDCPA under Rule 12(b)(6) of the Federal Rules of Civil Procedure; Walls moved to refer the core bankruptcy issues to the bankruptcy court. The district court granted Walls's motion by referring her claims for willful violation of the automatic stay, and for contempt on account of the alleged violation of the automatic stay and the discharge injunction, to the bankruptcy court. Neither this referral, nor these claims, are before us on appeal. Otherwise, the court granted Wells Fargo's motion to dismiss.

Walls timely appeals dismissal of her claims based on an implied right of action under § 524, and for violation of the FDCPA.[1]

## II

■■■ Although both parties agree that we have jurisdiction and a motions panel of this court ruled that we do pursuant to 28 U.S.C. § 1291, we must nonetheless examine the issue *sua sponte. In re Hawaii Corp.*, 796 F.2d 1139, 1141 (9th Cir. 1986). A question arises because two of the claims in Walls's complaint were referred to the bankruptcy court while the remaining claims were dismissed. In these circumstances it could be that the case is not final as to all claims, but we are satisfied that it is for purposes of § 1291 because the district court disposed of each of the issues that was before it under its original jurisdiction. Both claims referred to the bankruptcy court allege a violation of the Bankruptcy Code; therefore, both are "core proceedings" under 28 U.S.C. § 157 and, as such, may be finally resolved by

---

1. A brief filed by amicus curiae American Financial Services Association supports the position taken by Wells Fargo.

the bankruptcy court. *See In re Cinematronics, Inc.,* 916 F.2d 1444, 1449 (9th Cir. 1990) (bankruptcy court may "enter final judgments in so-called core cases, which are appealable to the district court") (citation omitted). For this reason, the district court's entry of judgment was a final decision as to all claims before it.

## III

Walls argues that § 105(a) itself empowers a district court to enforce a violation of § 524, and alternatively that Congress created a private cause of action for enforcement of the discharge injunction directly under the terms of § 524.

Section 105(a) describes the power of courts and states:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Section 524 prescribes the effect of discharge and provides:

> (a) A discharge in a case under this title—
>
> . . . . .
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

## A

Walls argues that § 524 creates substantive rights in favor of the debtor; therefore § 105(a) should be available to enforce these rights and should not be limited only to authorizing a cause of action for contempt. She points out that 105(a) permits a court to issue "any" order, and that pursuant to it a court on its own may take any action necessary to prevent an abuse of process. Further, Walls posits that violation of the discharge injunction is an abuse of process, therefore the district court has power to issue any order enforcing the injunction. Walls particularly relies on *Bessette v. Avco Fin. Servs., Inc.,* 230 F.3d 439 (1st Cir.2000), which she reads as recognizing that § 105(a) acts as a mechanism for enforcing any violation of substantive rights in the Code, specifically, a private cause of action under § 524. We disagree that *Bessette* goes so far, but regardless, are persuaded that violations of that section may not independently be remedied through § 105 absent a contempt proceeding in the bankruptcy court.

In *Bessette,* the debtor had executed a reaffirmation agreement with Avco that was not filed with the bankruptcy court and so did not comply with the requirements of § 524(c). The debtor brought suit in federal district court seeking damages for alleged violations of the automatic stay and discharge injunction provided by §§ 362 and 524 on the theory that § 524 provides a private right of action and, alternatively, that the district court is authorized to grant relief by way of § 105(a). The First Circuit addressed only the § 105(a) issue. It stated that § 105 does not itself create a private right of action, but that it does provide a bankruptcy court with statutory contempt powers in addition to whatever inherent contempt powers the court may have. Because these powers

inherently include the ability to sanction a party, the court concluded that a bankruptcy court is authorized to invoke § 105 to enforce the discharge injunction and order damages for the debtor if appropriate on the merits. The court of appeals left it to the district court's discretion whether to refer the § 105(a) proceeding to the bankruptcy court. *Bessette,* 230 F.3d at 444–46.

In our case the district court did just this, referring Walls's request for contempt to the bankruptcy court. That proceeding is not before us and we express no view one way or the other on the extent of the court's powers in determining Walls's claims.

But we decline Walls's invitation to expand the remedies available under the Bankruptcy Code for violating § 524. Walls suggests that § 105 may be used to create substantive rights in the Code, therefore a private right of action is appropriate because § 105 empowers the bankruptcy court to use "any" means necessary to advance the purpose of the Code. However, to create a new remedy would put us in the business of legislating. We agree with the Sixth Circuit's view in *Pertuso v. Ford Motor Credit Co.,* 233 F.3d 417, 423 (6th Cir. 2000), that it is not up to us to read other remedies into the carefully articulated set of rights and remedies set out in the Bankruptcy Code. As that court put it, "[t]he 'provisions of this title' simply denote a set of remedies fixed by Congress. A court cannot legislate to add to them." *Pertuso,* 233 F.3d at 423 (quoting

*Kelvin v. Avon Printing Co.,* 1995 WL 734481 at *4 (6th Cir.1995) (unpublished)). In any event, § 105(a) authorizes only such remedies as are "necessary or appropriate to carry out the provisions of this title." "[C]ivil contempt is the normal sanction for violation of the discharge injunction." 4 *Collier on Bankruptcy* ¶ 524.02[2][c] (15th ed. 1999). Here, as Wells Fargo acknowledges, compensatory civil contempt allows an aggrieved debtor to obtain compensatory damages, attorneys fees, and the offending creditor's compliance with the discharge injunction. Therefore, contempt is the appropriate remedy and no further remedy is necessary. *See Pertuso,* 233 F.3d at 423; *see also Cox v. Zale Delaware, Inc.,* 239 F.3d 910, 917 (7th Cir.2001) (suit for violation of § 524 can only be brought as contempt action).

### B

■ Alternatively, Walls contends that Congress intended for § 524 to be enforced, and that the *Cort*[2] factors favor finding an implied private right of action to do so. Wells Fargo counters that § 524 on its face does not expressly authorize any action for enforcement of its provisions, as both Walls and the Ninth Circuit Bankruptcy Appellate Panel recognize. *See In re Bassett,* 255 B.R. 747 (B.A.P. 9th Cir. 2000). Nor, it submits, does one arise by implication.

■ Walls relies heavily on the fact that debtors are intended to be protected by § 524. From § 524(a)(2) and (c), she

---

**2.** *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), identifying four factors to consider in deciding whether to imply a private right of action for violation of a federal statute:

1. Whether the plaintiff is a member of a class for whose special benefit the statute was enacted;

2. Whether there is any explicit or implicit indication of congressional intent to create or deny a private remedy;
3. Whether a private remedy would be consistent with the underlying purpose of the legislative scheme;
4. Whether the cause of action is one traditionally relegated to state law.
*See id.* at 78, 95 S.Ct. 2080.

infers a specific right to be free from additional collection by a creditor post discharge. Given such a substantive right in her favor, Walls submits that the court should not refuse to imply a cause of action. *See Cannon v. Univ. of Chicago,* 441 U.S. 677, 690 n. 13, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *First Pac. Bancorp, Inc. v. Helfer,* 224 F.3d 1117, 1125 (9th Cir.2000). While neither the Supreme Court nor our court has abandoned consideration of all the *Cort* factors, including whether the plaintiff is a member of the class for whose benefit the statute was enacted, it is clear that the critical inquiry is whether Congress intended to create a private right of action. *Alexander v. Sandoval,* 532 U.S. 275, 121 S.Ct. 1511, 1519–20, 149 L.Ed.2d 517 (2001); *Burgert v. The Lokelani Bernice Pauahi Bishop Trust,* 200 F.3d 661, 664 (9th Cir. 2000). As the Court explained in *Sandoval:*

> Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

*Sandoval,* 121 S.Ct. at 1519–20 (citations omitted).

■ Section 524 states that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). As the Sixth Circuit pointed out, "[t]he obvious

purpose is to enjoin the proscribed conduct—and the traditional remedy for violation of an injunction lies in contempt proceedings, not in a lawsuit such as this one" for money damages. *Pertuso,* 233 F.3d at 421. By the same token, § 524(c)

> does not proscribe any conduct at all; it merely sets forth the conditions under which a reaffirmation agreement is enforceable. The consequence of not meeting the conditions is that the agreement is unenforceable. Accordingly, in our view, the language of § 524(c), like that of § 524(a)(2), does not suggest a legislative intent to provide a private right of action of the sort asserted by the [plaintiffs].

*Id.*

Walls contends that the legislative history of § 524 supports a private right of action because the House Report states that § 524 was enacted to "prevent[] creditor experience in handling bankrupt debtors from overwhelming inexperienced debtors that are in a severely disadvantaged bargaining position after bankruptcy," and that the "unequal bargaining position of debtors and creditors" was a significant factor contributing to debtor reaffirmation of financial obligations discharged in bankruptcy. H.R. Rep. No. 95–595 at 163–64 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6124–25. However, "this language accompanied a version of H.R. 8200 that was not enacted into law," and is therefore of little value. *Pertuso,* 233 F.3d at 422. Additionally, to whatever extent this legislative history is relevant, nothing in it manifests any intent to create a private right of action; indeed, nothing in it gives any indication that these concerns are not adequately addressed through the contempt remedy that Congress expressly provided.

Congress certainly knows how to create a private right of action when it

wants to; for sure it knew how to create a private right of action when it amended §§ 362 and 524 in 1984. Both sections were enacted on November 6, 1978, and neither explicitly provided for a private right of action. Each had generally been held enforceable only through an action for contempt. In the 1984 amendments, Congress added subsection (h) to § 362, expressly conferring on debtors the right to sue for damages for a willful violation of the automatic stay. Section 524 was amended on the same day, but no similar provision, providing a private right of action for violation of the discharge injunction, was added. Had Congress meant to create a private right of action for violations of § 524, it could easily have done so; that it did not is a strong indiction that it did not intend any such remedy. See Pertuso, 233 F.3d at 422.[3] Walls suggests that Congress had no reason to provide an express damage remedy for § 524 because the right was already implied in it, but we are unaware of any court that had so found prior to the 1984 amendments. There is no reason to suppose that Congress thought it had implied remedies in § 524 that it had not implied in § 362. Moreover, creation of an express right of action under the automatic stay provision responded to widespread criticism of the need to rely on the contempt power to remedy violations of § 362. See Pertuso, 233 F.3d at 422; see also Jeffrey A. Stoops, Monetary Awards to the Debtor for Violations of the Automatic Stay, 11 Fla. St. U.L. Rev. 423, 439 (1983). So far as we know, no similar criticism had been leveled at use of the contempt sanction to remedy violations of § 524. Congress evidently saw no reason to change things as they were

(and are): there is no private right of action under § 524.

Walls also reminds us that the purpose of the Bankruptcy Code is to provide debtors with a "fresh start" and to protect them from subsequent collection efforts. She maintains that this purpose would be well served by including a private cause of action under § 524. Perhaps so, but there already is a remedy for violating the discharge injunction. Whether another one is needed is for Congress to decide. As things now stand, for us to imply a private right of action would undercut the "complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code," MSR Exploration, Ltd. v. Meridian Oil, Inc., 74 F.3d 910, 914 (9th Cir.1996), because it has an enforcement mechanism for violations of § 524 via the contempt remedies available under § 105(a). Implying a private remedy here could put enforcement of the discharge injunction in the hands of a court that did not issue it (perhaps even in the hands of a jury), which is inconsistent with the present scheme that leaves enforcement to the bankruptcy judge whose discharge order gave rise to the injunction. This makes a good deal of sense, given that the equities at issue are bankruptcy equities, and it would undermine Congress's deliberate decision to place supervision of discharge in the bankruptcy court: ·

> Since 1898, in all but extraordinary situations the effect of a discharge had been a matter which would be determined only in a state court or, where there was some ground of jurisdiction other than the involvement of the discharge, in a federal court. Congress became convinced that relegating a discharged bankrupt to other courts for vindication

---

**3.** This also bolsters our conclusion that § 105 does not allow for a private right of action to enforce § 524. If Congress had understood § 105 as permitting a private cause of action, the 1984 amendment creating one for violations of § 362 would have been superfluous.

of his discharge resulted so often in the loss of its intended benefit and frustration of the objective of the federal legislation that jurisdiction of determining the effect of a discharge was given to the bankruptcy court.

Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 137, 93d Cong., 1st Sess. (1973), *quoted in* H.R. Rep. No. 95–595 at 46–47 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6008.

For these reasons we cannot say that Congress intended to create a private right of action under § 524, and we shall not imply one.

## IV

 Walls contends that, contrary to what the district court held, the Bankruptcy Code does not preclude a simultaneous claim under the FDCPA. She calls upon us to read the two competing statutes jointly, as the Supreme Court urged courts to do whenever possible in *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984). In her view, Wells Fargo engaged in unfair and unconscionable collection practices, which are forbidden by the FDCPA,[4] by trying to collect her debt in violation of the discharge injunction. This, she maintains, is outside of the bankruptcy proceeding because the bankruptcy is over and done with, while the FDCPA (whose purpose is to prevent bankruptcy) is still needed to protect a debtor who has been discharged.

There is no escaping that Walls's FDCPA claim is based on an alleged viola-

tion of § 524. As the district court noted, this necessarily entails bankruptcy-laden determinations. Were her payments "voluntary" under § 524(f)? Was she required to enter into a reaffirmation agreement pursuant to § 524(c)? How much of a free ride did her "ride through" under *Parker* afford? The Bankruptcy Code provides its own remedy for violating § 524, civil contempt under § 105. To permit a simultaneous claim under the FDCPA would allow through the back door what Walls cannot accomplish through the front door—a private right of action. This would circumvent the remedial scheme of the Code under which Congress struck a balance between the interests of debtors and creditors by permitting (and limiting) debtors' remedies for violating the discharge injunction to contempt. "[A] mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code ... demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike." *MSR Exploration*, 74 F.3d at 914 (state law malicious prosecution claim based on bankruptcy filings preempted). Nothing in either Act persuades us that Congress intended to allow debtors to bypass the Code's remedial scheme when it enacted the FDCPA. While the FDCPA's purpose is to avoid bankruptcy, if bankruptcy nevertheless occurs, the debtor's protection and remedy remain under the Bankruptcy Code. *See Kokoszka v. Belford*, 417 U.S. 642, 651, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974).

---

**4.** Section 1692f of the FDCPA provides:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.
15 U.S.C. § 1692f.

Because Walls's remedy for violation of § 524 no matter how cast lies in the Bankruptcy Code, her simultaneous FDCPA claim is precluded.[5]

### V

To the extent that Walls appeals the district court's dismissal of her claims for declaratory and injunctive relief, an accounting, and attorneys fees, we decline to consider it because she failed to brief these issues. *See Ceja v. Stewart*, 97 F.3d 1246, 1252 (9th Cir.1996) (issues not discussed in appellant's brief deemed waived).

AFFIRMED.

---

5. In light of this disposition, we need not reach Wells Fargo's alternative argument that the FDCPA does not apply because it is not a "debt collector" within the meaning of § 1692a(6).