FILED

DEC 20 2024

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>MELANIO L. VALDELLON and ELLEN C. VALDELLON,<br>Debtors. | BAP No. EC-24-1086-GCB<br><br>Bk. No. 14-22555<br><br>Adv. No. 21-08008 |
| MELANIO L. VALDELLON; ELLEN C. VALDELLON,<br>Appellants,<br>v.<br>PHH MORTGAGE CORPORATION; IMPAC CMB TRUST SERIES 2005-6; WELLS FARGO BANK, N.A., AS INDENTURE TRUSTEE UNDER THE INDENTURE RELATING TO THE IMPAC CMB TRUST SERIES 2005-6,<br>Appellees. | OPINION |

Appeal from the United States Bankruptcy Court
for the Eastern District of California
Christopher D. Jaime, Bankruptcy Judge, Presiding

APPEARANCES:

Mark A. Wolff of Wolff & Wolff argued for appellants; Neil J. Cooper of Houser LLP argued for appellees.

Before: GAN, CORBIT, and BRAND, Bankruptcy Judges.

GAN, Bankruptcy Judge:

**INTRODUCTION**

Chapter 13[1] debtors Melanio L. Valdellon and Ellen C. Valdellon ("Debtors") completed their plan and received a discharge. Although the plan provided for payment of arrears and cure of their mortgage default, Debtors allege that mortgage servicer PHH Mortgage Corporation and note holder Wells Fargo Bank, N.A. (together "PHH") continued to assert past due amounts and ultimately accelerated the note and initiated foreclosure proceedings based on prepetition arrears. Debtors filed an adversary complaint against PHH for willful failure to credit plan payments, intentional infliction of emotional distress, and other state law claims.

The bankruptcy court dismissed the complaint with prejudice, holding: (1) Debtors did not plausibly allege a violation of § 524(i) because they had an incurable material default under the plan and did not demonstrate that PHH failed to credit payments "under a plan;" and (2) emotional distress damages based on civil contempt are unavailable as a matter of law. The court concluded it lacked jurisdiction over Debtors' remaining state law claims and alternatively abstained under 28 U.S.C. § 1334(c)(1).

We hold that the bankruptcy court erred by dismissing Debtors' claim for relief under § 524(i). Debtors sufficiently alleged that PHH failed

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

to credit plan payments by giving them the curative effect required by the confirmed plan. The court erred by holding that the plan must have remained in default because the discharge order conclusively bars a later finding of default.

We have previously held that bankruptcy courts can award compensatory damages for emotional distress caused by willful violations of the discharge injunction, *Ocwen Loan Servicing, LLC v. Marino (In re Marino)*, 577 B.R. 772, 788-88 (9th Cir. BAP 2017), *aff'd in part & appeal dismissed in part*, 949 F.3d 483 (9th Cir. 2020), and we disagree with the bankruptcy court that *Taggart v. Lorenzen*, 587 U.S. 554 (2019) alters its authority to do so.

We REVERSE the bankruptcy court's order dismissing Debtors' second amended complaint as it pertains to their claim for violations of § 524(i),[2] and we REMAND for further proceedings consistent with this disposition. We publish to clarify that a creditor may be liable for willful failure to credit plan payments when it disregards the cure effectuated by a completed plan, and to affirm our holding that bankruptcy courts may, in

---

[2] As discussed below, we affirm dismissal of Debtors' separate claims for intentional and negligent infliction of emotional distress because they are premised on the alleged violations of § 524(i). Debtors' exclusive remedy for such violations is through a civil contempt order. *See Basset v. Am. Gen. Fin., Inc. (In re Bassett)*, 255 B.R. 747, 758 (9th Cir. BAP 2000) ("[C]ourts have uniformly held that federal law provides the sole remedy for violation for § 524 and that all state-law claims are preempted."), *aff'd in relevant part*, 285 F.3d 882 (9th Cir. 2002). Additionally, Debtors do not address the court's decision to abstain from hearing the state law claims, and thus, have waived the issue. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

appropriate circumstances, award emotional distress damages for violations of the discharge injunction, either directly or through § 524(i).

**FACTS[3]**

**A.      Debtors' bankruptcy case**

Debtors filed a chapter 13 petition in March 2014, and the bankruptcy court confirmed their first amended plan in April 2014. The plan classified PHH's claim as a class 1 secured claim to be treated according to § 1322(b)(5) with arrears and ongoing mortgage payments paid through the sixty-month plan. The amount of the arrears to be paid under the plan was $19,140.48, as indicated in the proof of claim filed by Debtors. PHH never filed an amended proof of claim to dispute the arrears asserted by Debtors.

Debtors filed a first modified plan in July 2015 to adjust for payment of certain tax debts, which the court confirmed in December 2015. In 2018, the chapter 13 trustee ("Trustee") filed a motion to dismiss the case, and though Debtors opposed the motion, they agreed to propose a second modified plan in July 2018, which the court confirmed.

In September 2019, approximately six months after the plan term, Trustee filed a motion to dismiss the case, contending that Debtors were delinquent in the amount of $10,246.37. Trustee stated that Debtors'

---

[3] We exercise our discretion to take judicial notice of documents electronically filed in the adversary proceeding and main bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

4

mortgage was delinquent by four post-petition payments, but all other claims had been paid.[4] According to Trustee, Debtors were in month sixty-six of a sixty-month plan and thus, were required to make the delinquent payment in a lump sum. Trustee's exhibits indicated that Debtors had made total plan payments of $166,184.21.

Although Debtors did not file a written objection, they argue that Trustee was asserting a delinquency for ongoing mortgage payments which came due after the sixty-month plan period, and pursuant to their second modified plan, they were required to make total plan payments of only $164,549. Trustee withdrew the motion to dismiss on September 24, 2019, and at the hearing, the court dismissed the motion without prejudice. Three days later, Trustee filed a notice of completed plan payments and notice of final cure payment ("NOFC").

In October 2019, PHH filed a response to the NOFC, stating that it agreed Debtors had paid the full amount required to cure the default. PHH further stated that Debtors were "current with all postpetition payments consistent with § 1322(b)(5) of the Bankruptcy Code," and the next postpetition payment was due November 1, 2019. Trustee filed a final

---

[4] Because Trustee acknowledged that he paid all other claims under the plan, including priority tax claims, the logical conclusion is that the four delinquent post-petition mortgage payments came due after completion of the plan term. Section 4.02 of the confirmed plan required distributions to be made in the following order: (1) trustee's fees; (2) post-petition monthly payments due on Class 1 secured claims; (3) the monthly dividend for administrative expenses; (4) the monthly dividend payable on account of Class 1 arrearage claims, Class 2 claims, and executory contract and unexpired lease arrearage claims; (5) Class 5 priority claims; and (6) unsecured claims.

report and account in February 2020, which the court approved in May 2020. The bankruptcy court entered a discharge order in June 2020 and closed the case.

**B.     The adversary proceeding**

**1.  The first complaint and motion to exclude evidence**

In January 2021, Debtors filed an adversary complaint against PHH. Debtors alleged that they made all post-plan mortgage payments until PHH refused their July 2020 payment, after the court entered the discharge order. They sought declaratory and injunctive relief, contempt sanctions, and other damages, but they did not clearly articulate their causes of action or delineate allegations among the defendants. PHH filed an answer denying allegations of wrongdoing.

In May 2021, Debtors filed a motion to exclude evidence and to conclusively determine facts pursuant to Rule 3002.1(g) and (i). Debtors learned through discovery that PHH disputed that their mortgage default was cured through the plan, and Debtors argued that Rule 3002.1 required that if PHH disputed Debtors' cure of prepetition arrears or the status of their ongoing monthly payments, it was required to provide that information in its response to the NOFC. Because PHH's response to Trustee's NOFC did not include any allegations or evidence of postpetition default, Debtors sought an order precluding PHH from presenting any evidence not provided in its response to the NOFC.

6

PHH opposed the motion and argued it was essentially a motion for summary judgment and unauthorized by Rule 3002.1. PHH disputed many of Debtors' allegations and maintained that the accuracy of its response to the NOFC was a central disputed fact. It acknowledged that Rule 3002.1(g) gives the court discretion to preclude the omitted information, but it argued that its failure to dispute the NOFC was harmless because Debtors waited several months to seek relief after PHH began sending monthly statements showing a balance due.

After conducting an *in camera* review of Debtors' tax returns, the bankruptcy court held that Rule 3002.1 was inapplicable because the home securing the PHH claim was not Debtors' principal residence as of the March 2014 filing date. The court denied Debtors' motion and concurrently issued an order to file an amended complaint. The court described the original complaint as a "shotgun pleading" and ordered Debtors to allege each claim independently and allege specific conduct supporting their claims.

### 2. The first amended complaint and motion to dismiss

In July 2021, Debtors filed their first amended complaint. They asserted claims for: (1) violations of the discharge injunction under § 524(a)(2) and (i) based on PHH's alleged failure to credit mortgage payments made by Debtors after October 1, 2019; (2) intentional infliction of emotional distress; (3) "contract, negligent infliction of emotional distress and declaratory relief;" and (4) unlawful fraudulent and unfair

7

business acts and practices under the California Business and Professions Code.

In response, PHH filed a motion to dismiss under Civil Rule 12(b)(6), made applicable by Rule 7012. It argued that Debtors had no private right of action for a violation of the discharge injunction and any relief must be by motion in the main bankruptcy case.[5] It asserted that Debtors failed to allege a violation under § 524(a)(2) because PHH's lien was not discharged, and its claim was not modified, other than to cure the arrearage. According to PHH, its lien secured all pre- and post-petition amounts due under the loan, and its refusal to accept post-plan payments could not be an attempt to collect, recover, or offset a prepetition debt as a personal liability of the Debtors. PHH also maintained that Debtors' state law causes of action were preempted by the Bankruptcy Code, and the court lacked jurisdiction over those claims.

The bankruptcy court granted PHH's motion to dismiss without argument. The court reasoned that it had discretion to consider a violation of the discharge injunction as part of an adversary proceeding, but it held that Debtors failed to state a claim for relief under § 524(a)(2) or (i) because they alleged PHH's failure to credit only post-plan payments. Because Debtors' plan treated the PHH claim under § 1322(b)(5)—and § 1328(a)(1)

---

[5] Debtors responded by filing a motion for contempt in the main bankruptcy case, supported by several exhibits. After the bankruptcy court granted PHH's motion to dismiss, it dismissed Debtors' motion for contempt as moot.

provides that such claims remain contractually due and are not discharged—the court held that PHH's collection of direct payments after discharge could not violate the discharge injunction. The court further held that PHH's refusal to accept post-plan payments could not be a violation of § 524(i), which pertains only to payments received "under" a confirmed plan. The court dismissed count one with prejudice because Debtors did not request leave to amend.

The bankruptcy court also dismissed with prejudice the claims for intentional infliction of emotional distress and negligent infliction of emotional distress because those claims were based on the same common factual allegations as count one. Finally, the court dismissed the remaining claims because it lacked jurisdiction over non-core state law claims, and alternatively, it abstained from hearing all non-core state law claims under 28 U.S.C. § 1334(c)(1).

### 3. The District Court appeal

Debtors appealed the bankruptcy court's order to the District Court for the Eastern District of California ("District Court"). The District Court affirmed the bankruptcy court's dismissal with prejudice of Debtors' § 524(a) claim. *Valdellon v. Wells Fargo Bank, N.A. (In re Valdellon)*, No. 2:21-cv-01840-DJC, 2024 WL 404404 (E.D. Cal. Feb. 2, 2024). But it reversed the bankruptcy court's dismissal with prejudice of Debtors' claims under § 524(i) and their related state law claims for intention infliction of emotional distress and negligent infliction of emotional distress. *Id.* at *1.

The District Court agreed that payments made after October 1, 2019, were not payments "under the plan," and thus, the bankruptcy court did not err in dismissing the claims for relief under § 524(i) as alleged. *Id.* at *6. However, the District Court held that Debtors' evidence and arguments "clearly raise concerns over [PHH's] application of payments received from the trustee under the Plan." *Id.*

The District Court noted that Debtors alleged they completed their plan payments, yet they received statements from PHH immediately after completion of their plan, showing significant arrears. *Id.* In rejecting PHH's assertion that prepetition amounts remained due because of Debtors' underreported arrears, the District Court reasoned that PHH failed to file a proof of claim to correct any alleged underreporting, and admitted in its response to the NOFC that Debtors had cured the prepetition default and were current on the loan. *Id.* at *7. The District Court concluded that PHH was "bound by the Plan, the terms of which cured Debtors' pre-petition arrearages and positioned Debtors to exit bankruptcy current on their Loan." *Id.*

The District Court further held that the evidence indicated that PHH's "misapplication of payments was likely willful," and "Debtors have alleged that this willful misapplication of Plan payments caused them harm in the form of additional fees, costs, and expenses." *Id.* at *8. The District Court held:

> Debtors' allegations are sufficient to find that Debtors may have a cause of action under section [524] (i) for the misapplication of payments made by the trustee under the Plan. Indeed, this is "[O]ne of the classic situations that led to the adoption of § 524(i): a chapter 13 debtor makes all the required payments on long-term debt required through the life of his confirmed plan, receives a discharge, and is then told that his mortgage is in default, he owes additional charges, and is threatened with foreclosure. Often, this is the same scenario that drove him to bankruptcy in the first place. Section 524(i) presents a remedy for such cases."

*Id.* (quoting *Ridley v. M&T Bank (In re Ridley)*, 572 B.R. 352, 361 (Bankr. E.D. Okla. 2017)). The District Court granted Debtors leave to amend their complaint and remanded the case to the bankruptcy court.

**4. The second amended complaint and motion to dismiss**

In March 2024, Debtors filed their second amended complaint, asserting claims for: (1) violations of § 524(i); (2) intentional infliction of emotional distress; (3) breach of contract, negligent infliction of emotional distress and/or declaratory relief; and (4) unlawful fraudulent and unfair business acts and practices under state law. Debtors alleged that they cured the prepetition default and Trustee made all postpetition monthly payments required by the plan. They alleged that PHH incorrectly credited payments under the plan, causing them material injury in the form of additional costs, fees, charges, and emotional distress. Debtors asserted that, despite admitting that Trustee paid all prepetition arrears through the

11

plan and ongoing monthly payments were current, PHH continued to send monthly statements showing substantial "past unpaid amounts."[6]

PHH responded by filing a motion to dismiss for failure to state a claim and lack of standing. It argued that Debtors failed to identify any plan payment which was misapplied, and they failed to allege that such misapplication occurred while Debtors were not in material default. PHH further argued that Debtors did not allege a material injury because its lien was unaffected by the discharge, and the lien continued to secure all pre- and post-petition amounts under the loan. According to PHH, regardless of whether it credited payments to arrears or ongoing monthly payments, Debtors remained liable for all amounts and could not demonstrate injury. PHH argued that Debtors' remaining claims were preempted by the Bankruptcy Code, the bankruptcy court lacked jurisdiction over state law claims, and it should otherwise abstain from hearing the remaining state law claims.

At the bankruptcy court's request, the parties filed briefs addressing whether the Supreme Court's decision in *Taggart* altered the authority of

---

[6] Debtors attached statements from PHH showing the following "past unpaid amounts": (1) $13,864.05 on August 16, 2019; (2) $16,183.86 on September 16, 2019; (3) $16,220.35 on November 21, 2019; (4) $18,540.19 on December 16, 2019; (5) $18,558.40 on January 7, 2020; (6) $13,918.80 on January 8, 2020; (7) $11,559.00 on January 9, 2020; (8) $6,959.40 on January 16, 2020; (9) $6,959.40 on February 26, 2020; and (10) $9,279.20 on March 16, 2020. Debtors attached correspondence from PHH, sent in July 2020, which stated that the account was in foreclosure and the loan was accelerated.

the court to award emotional distress damages for violations of § 524(i), which are treated as violations of the discharge in junction.

After a hearing, the bankruptcy court granted PHH's motion to dismiss counts one and two with prejudice and counts three and four without prejudice. The court issued a written opinion holding that compensatory damages awardable by a bankruptcy court for violations of the discharge injunction, or under § 524(i), cannot include emotional distress damages.

The bankruptcy court reasoned that *Taggart* instructs courts to look to the "old soil" of injunction enforcement and "traditional principles" of civil contempt—and not to § 362 by analogy—when deciding sanctions for violations of § 524. The court acknowledged that compensatory damages are available under civil contempt, but courts traditionally limited compensation to pecuniary damages. Because emotional distress damages are nonpecuniary, the bankruptcy court held that such damages are unavailable under traditional principles of injunction enforcement.

The bankruptcy court further held that Debtors failed to identify any specific plan payment which PHH failed to credit, and instead relied on an inference of misapplication. However, since the court was required to accept as true that Debtors' postpetition payments were current as of September 2019, it concluded that plan payments must have been credited appropriately. And because any failure to credit post-plan payments could

13

not give rise to a violation of § 524(i), the court held that Debtors failed to state a claim for relief.

The court also held that Debtors failed to state a claim for relief under § 524(i) because they were in material default under the plan. The court suggested that Debtors apparently cured the monetary default asserted by Trustee in September 2019, but because their plan exceeded the maximum sixty-month commitment period, Debtors had an incurable material default. Finally, the bankruptcy court determined it lacked jurisdiction over related state law claims and alternatively abstained under 28 U.S.C. § 1334(c)(1).

Debtors filed a motion for reconsideration, which the court granted in part. In its amended order and opinion, the court clarified that Debtors' claim for emotional distress damages was dismissed with prejudice to the extent it was based on a violation of § 524(i) and dismissed without prejudice to the extent it was based on any other facts or conduct. Debtors timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err by dismissing with prejudice Debtors' claim for violations of § 524(i)?

Did the bankruptcy court err by holding as a matter of law that it cannot compensate a party for emotional distress caused by violations of § 524(i)?

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's grant of a Civil Rule 12(b)(6) motion to dismiss, accepting all factual allegations in the complaint as true and construing them in the light most favorable to the nonmoving party. *Calise v. Meta Platforms, Inc.,* 103 F.4th 732, 738 (9th Cir. 2024); *Narayanan v. Brit. Airways*, 747 F.3d 1125, 1127 (9th Cir. 2014) (citing *Newdow v. Lefevre*, 598 F.3d 638, 642 (9th Cir. 2010)). We similarly review de novo the bankruptcy court's interpretation of the Bankruptcy Code. *Smith v. Rojas (In re Smith)*, 435 B.R. 637, 642–43 (9th Cir. BAP 2010) (citing *Mendez v. Salven (In re Mendez)*, 367 B.R. 109, 113 (9th Cir. BAP 2007)).

Under de novo review, "we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

### A. Legal standards governing Civil Rule 12(b)(6)

Civil Rule 12(b)(6) provides that dismissal is appropriate if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In assessing the adequacy of the complaint, the court must accept as true all

allegations and construe them in the light most favorable to the plaintiff. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Consequently, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks and citation omitted).

A motion to dismiss "may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

## B.    Debtors stated a claim for relief for violations of § 524(i).

Congress enacted § 524(i) as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Pub. L. No. 109-8 § 302, 119 Stat. 23 (2005). The purpose of § 524(i) is to address issues with long-term mortgage debts which are not discharged in a bankruptcy case. *See Carnegie v. Nationstar Mortg., LLC (In re Carnegie)*, 621 B.R. 392, 408 (Bankr. M.D. N.C. 2020). The statute was enacted in response to decisions that questioned a court's ability to remedy a creditor's failure to properly credit payments, and it "makes clear that a failure to properly credit plan payments that results in a post-discharge assertion that the debtor is in default is simply not a matter for state courts to resolve, but rather a critical

16

issue that must be resolved by the bankruptcy court . . . ." 4 COLLIER ON BANKRUPTCY ¶ 524.08 (Alan N. Resnick & Henry J. Sommer, eds. 16th ed. rev. 2024).

Section 524(i) provides:

The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

Because § 524(i) makes a willful failure to credit payments under a plan a violation of the discharge injunction, the court may grant relief through a civil contempt order. *See Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002); *Walls v. Wells Fargo Bank., N.A.*, 276 F.3d 502, 509 (9th Cir. 2002). "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *In re Bennett*, 298 F.3d at 1069 (quoting *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999)).

In *Taggart*, the Supreme Court clarified the standard by which bankruptcy courts may impose contempt sanctions for violations of the

17

discharge injunction. 587 U.S. at 559-60. The Court held that bankruptcy courts should not impose civil sanctions "where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Id.* at 561 (cleaned up). Accordingly, "civil contempt . . . may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope." *Id.* at 562.

But "[t]he *Taggart* refinements of the civil contempt standard in the bankruptcy discharge context did not otherwise alter a movant's threshold burden of going forward." *Mellem v. Mellem (In re Mellem)*, 625 B.R. 172, 178 (9th Cir. 2021). To state a claim for contempt sanctions under § 524(i), a debtor must allege: (1) a willful failure to credit payments received under a confirmed plan; and (2) material injury to the debtor. *In re Valdellon*, 2024 WL 404404, at *5.

### 1. Debtors alleged a plausible claim for relief under § 524(i).

The bankruptcy court erred by determining that Debtors failed to allege a willful failure to credit plan payments. The bankruptcy court held, in part, that Debtors failed to state a claim because they did not specify a particular payment which PHH failed to credit. But it is not necessary for Debtors to specify exactly how PHH failed to credit the payments, when the allegations are that PHH failed to give the arrearage payments their curative effect.

Crediting payments under the plan requires more than merely accepting payments from the trustee; creditors must apply the payments to the debt in the manner directed by the plan. When a plan provides for a cure of prepetition arrears and maintenance of ongoing mortgage payments, the creditor must reinstate the loan and treat prepetition arrears as satisfied upon completion of plan payments. Section 524(i) serves to ensure that creditors abide by the terms of the plan and allow debtors to exit bankruptcy current on their mortgage, owing no past due amounts.

Conditioning relief under § 524(i) on a debtor's ability to show a specific misapplication of cure payments would obviate the statute's purpose in cases where the creditor refuses reinstate a loan and effectuate a cure of prepetition arrears. Thus, even if PHH applied every cure payment to the outstanding loan balance, it could still willfully fail to "credit" those payments if it intentionally did not give them the curative effect required by the plan.

Here, Debtors alleged that Trustee made all payments under the confirmed plan, and they made all post-plan monthly payments until PHH refused their July 2020 payment. Despite curing the default and maintaining ongoing mortgage payments, Debtors alleged that PHH sent post-plan statements showing "past unpaid amounts" of several thousand dollars. These allegations, and the reasonable inferences from them, are plausibly suggestive of a violation of § 524(i).

19

At oral argument, counsel for PHH claimed that the past due amounts were caused by Debtors underreporting prepetition arrears in their proof of claim. Like the District Court before us, we reject this argument.

PHH is bound by the terms of the confirmed plan. The amount necessary to cure the prepetition arrearage was fixed by the proof of claim and confirmation order at $19,140.48. PHH received the cure payments from Trustee. Upon completion of those payments, the prepetition arrears were completely satisfied, and the default was cured. PHH's continued insistence otherwise demonstrates that it did not give the plan payments their curative effect, and the reasonable inference from Debtors' allegations is that PHH failed to credit payments in accordance with the plan.

We agree with the District Court that this is a typical situation that led to the enactment of § 524(i): "a chapter 13 debtor makes all the required payments on long-term debt required through the life of his confirmed plan, receives a discharge, and is then told that his mortgage is in default, he owes additional charges, and is threatened with foreclosure." *In re Valdellon*, 2024 WL 404404, at *8 (citation omitted).

**2.  The court erred by holding Debtors were precluded from seeking relief based on its finding that the plan was in default.**

Debtors argue that the court erred by making a factual finding of an incurable default in the context of a Civil Rule 12(b)(6) motion without giving Debtors an opportunity to respond. They also argue that the court

20

clearly erred by finding a default because the Trustee was asserting a delinquency based on post-plan mortgage payments. Finally, they argue the court was barred by the discharge order from considering whether Debtors were in default under the plan.

We agree that the existence of a plan default is typically a question of fact which cannot be determined in the context of a motion to dismiss. But in this case, whether Debtors were in default at the time of Trustee's motion is not determinative of their ability to assert a § 524(i) violation.

Section 524(i) provides that a creditor's willful failure to credit payments received under a confirmed plan constitutes a violation under § 524(a)(2) unless "the plan **is** in default" (emphasis added). The statute's present tense phrasing means that a creditor cannot violate § 524(i) if there is a current default under the plan. But when a plan is not in default, creditors must credit payments they have received.

It necessarily follows that, upon cure of a plan default, creditors must give effect to payments received while the plan was in default. Thus, we are not concerned with prior plan defaults which were ultimately resolved. Instead, because PHH was required to reinstate the loan and treat arrears as satisfied upon completion of plan payments, we must consider whether the plan remained in default after the cure was effectuated.

Debtors argue that the discharge order bars a later finding of a plan default. Discharge is not necessary to effectuate a cure. *See HSBC Bank USA, N.A. v. Blendheim (In re Blendheim)*, 803 F.3d 477, 488 (9th Cir. 2015)

(discussing Chapter 13 restructuring tools available to discharge-ineligible debtors, including the ability to cure a default). But completion of plan payments is a necessary condition to entry of discharge. *See* 11 U.S.C. § 1328(a) ("as soon as practicable after completion by the debtor of all payments under the plan . . . the court shall grant the debtor a discharge . . . ."). By entering the discharge order, the bankruptcy court necessarily determined that Debtors made all payments under the plan. That determination is now law of the case, and we do not reconsider it.[7]

Relying on *Kinney v. HSBC Bank USA, N.A. (In re Kinney)*, 5 F.4th 1136 (10th Cir. 2021), *cert. denied*, 143 S. Ct. 302 (2022), the bankruptcy court concluded that Debtors did not make all plan payments within the sixty-month commitment period, and thus, had an incurable default. The court acknowledged it entered a discharge order but stated: "Technically, all plan payments were completed. They were just completed significantly late." This conclusion belies the central reasoning underpinning the holding of *Kinney*: payments made after the plan term ends cannot be "payments under the plan." *See id.*, at 1142-45. Under the Tenth Circuit's

---

[7] Under the law of the case doctrine, a court is barred from reconsidering an issue previously decided in the same court or a higher court in the same case. *FDIC v. Kipperman, (In re Com. Money Ctr., Inc.)*, 392 B.R. 814, 832 (9th Cir. BAP 2008) (citing *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990)); *see also Kimball v. Callahan,*590 F.2d 768, 771 (9th Cir. 1979) ("[U]nder the 'law of the case' doctrine one panel of an appellate court will not as a general rule reconsider questions which another panel has decided on a prior appeal in the same case."). Law of the case doctrine applies where the issue was decided, either expressly or by necessary implication. *In re Com. Money Ctr., Inc.*, 392 B.R. at 832.

reasoning, a debtor who has not made all payments under the plan by the end of the plan term has an incurable default and cannot receive a discharge as a matter of law.[8] *Id.* at 1147.

Here, Debtors completed all "payments under the plan," and the plan terminated. A plan cannot be complete, with discharge entered, and simultaneously be in default. Because Debtors' plan was not in default when PHH allegedly failed to give the cure payments their curative effect, Debtors are not precluded from seeking relief under § 524(i).

## C. The court erred by determining that Debtors cannot be awarded compensatory damages for emotional distress.

The bankruptcy court dismissed Debtors' claim for intentional infliction of emotional distress because it held as a matter of law that emotional distress damages are unavailable for violations of the discharge injunction, either directly or through § 524(i). We agree that count two should be dismissed because it is premised entirely on alleged violations of § 524(i), which are treated as violations of the discharge injunction. There is no private right of action for such violations. *Walls*, 276 F.3d at 509. Debtors' sole remedy is through contempt sanctions from the bankruptcy

---

[8] We need not decide in this case whether the discharge order was proper or whether a bankruptcy court may, in its discretion, enter discharge when a debtor makes a final payment beyond the sixty-month commitment period. However, when a discharge order is final and no longer subject to revocation or reversal, it conclusively determines that a debtor made all payments under the plan and the plan can no longer be in default. *See* 11 U.S.C. § 1328(e) (permitting revocation of a discharge order only within one year of entry).

court. *See In re Bassett*, 255 B.R. at 758. But the bankruptcy court erred to the extent it held that emotional distress damages are not compensable for violations of the discharge injunction.

Bankruptcy courts can remedy violations of the discharge injunction through civil contempt sanctions under § 105(a). Civil sanctions "must either be compensatory or designed to coerce compliance." *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1192 (9th Cir. 2003) (citing *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1137–38 (9th Cir. 2001)); *see also Taggart*, 587 U.S. at 560-61 ("courts have long imposed civil contempt sanctions to 'coerce the defendant into compliance' with an injunction or 'compensate the complainant for losses' stemming from the defendant's noncompliance with an injunction." (citations omitted)). "[C]ompensatory civil contempt allows an aggrieved debtor to obtain compensatory damages, attorneys fees, and the offending creditor's compliance with the discharge injunction." *Walls*, 276 F.3d at 507.

We have previously held that bankruptcy courts can award emotional distress damages as compensation for civil contempt. *In re Marino*, 577 B.R. at 787. In so holding, we relied on Ninth Circuit precedent allowing emotional distress damages for violations of the automatic stay. *Id.* (citing *Snowden v. Check Into Cash of Wash. Inc. (In re Snowden)*, 769 F.3d 651, 657 (9th Cir. 2014); *Dawson v. Wash. Mut. Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1149 (9th Cir. 2004)).

Based on *Taggart*, the bankruptcy court rejected our analysis in *Marino* and instead looked to the "old soil" of injunction enforcement and its "traditional principles" of civil contempt to hold that nonpecuniary emotional distress damages are not compensable.

We do not read *Taggart* so broadly. The question presented in *Taggart* "concerns the criteria for determining when a court may hold a creditor in civil contempt for attempting to collect a debt that a discharge order has immunized from collection." 587 U.S. at 556. The Supreme Court clarified that the standard is neither purely subjective nor akin to strict liability; it requires "no objectively reasonable basis for concluding that the creditor's conduct might be lawful."[9] *Id.* at 557. But the Court did not address the range of permissible compensatory damages available under civil contempt, nor did it hold that courts should not look to § 362(k) by analogy in deciding compensatory damages for civil contempt.

_____

[9] The Supreme Court noted that bankruptcy courts often use a standard akin to strict liability to remedy stay violations because § 362(k) provides that an individual "injured by any willful violation" of the stay "shall recover actual damages." *Id.* at 564-65. The Court reasoned that the more general language of § 105(a), and the slightly different purpose of the discharge injunction, undermined the debtor's proposal to use a standard akin to strict liability for violations of the discharge injunction. The Court stated: "We note that the automatic stay provision uses the word 'willful,' a word the law typically does not associate with strict liability but whose construction is often dependent on the context in which it appears. We need not, and do not, decide whether the word 'willful' supports a standard akin to strict liability." *Id.* at 565 (cleaned up). While the general language of § 105(a) does not include a "willfulness" element, a violation of § 524(i) is cognizable only upon a showing of a "willful failure of a creditor to credit payments." Thus, it is not clear whether the *Taggart* refinements to the standard for civil contempt apply equally to violations of §524(i). This issue is not before us, and we need not decide it.

We are not persuaded that *Taggart* compels us to depart from our precedent in *Marino*. *See McLean v. Green Point Credit, LLC (In re McLean)*, 794 F.3d 1313, 1325 (11th Cir. 2015) (holding that emotional distress damages are compensable for discharge injunction violations because such damages are available "in the materially similar context of a violation of the automatic stay"). We agree with the Eleventh Circuit that, although the automatic stay and discharge injunction serve different purposes, "there is no material difference in the equitable interests a bankruptcy court must consider in imposing emotional distress damages for the violation of one provision as opposed to the other." *Id.* at 1325 n.5.

Compensatory civil contempt sanctions are "remedial," *Oracle USA, Inc. v. Rimini Street, Inc.*, 81 F.4th 843, 859 (9th Cir. 2023), and courts have "longstanding authority" to "enter broad compensatory awards for all contempts though civil proceedings," *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 838 (1994). *See also Melendres v. Skinner*, 113 F.4th 1126, 1134 (9th Cir. 2024) ("District courts have broad equitable power to order appropriate relief in civil contempt proceedings.") (cleaned up). Because civil contempt sanctions "compensate the complainant for losses sustained," they must be "based upon evidence of complainant's actual loss." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947).

The measure of compensation for civil sanctions is not limited to pecuniary losses. *See Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448,

26

455-56 (1932). In *Leman*, the Supreme Court held that lost profits are compensable through civil contempt sanctions. The bankruptcy court reads *Leman* as treating lost profits as the "equivalent of or substitute for the injured party's actual pecuniary loss" and it reasons that the Supreme Court did not add new or different types of damages to the "bucket of pecuniary losses recoverable as compensatory damages for civil contempt." Again, we disagree.

In *Leman*, the Supreme Court held that a party injured by a violation of an injunction could be awarded lost profits as compensatory civil sanctions. *Id.* at 456-57. The Court noted the "clear distinction" between "actual pecuniary loss" and lost profits, which are nonpecuniary, but held that lost profits are nevertheless "included in the concept of compensatory relief." *Id.* at 456. Because a contempt proceeding is equitable in nature, the Court held "there is no reason why in such a proceeding[,] equitable principles should not control the measure of relief to be accorded to the injured party." *Id.* at 457. *Leman* stands for the clear proposition that compensatory civil sanctions are not limited to pecuniary losses.

We expect that violations of the discharge injunction often will involve nonpecuniary damages. A central purpose of a bankruptcy proceeding is the "fresh start" granted to debtors through the bankruptcy discharge. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991). As one court has observed:

> One of the benefits an individual receives from a discharge is peace of mind. The individual need no longer be concerned that a discharged debt will be enforced against him or her. When a creditor disregards the discharge and attempts to collect a debt, it is certainly within the realm of possibility that the debtor will be harmed emotionally. When such occurs, the harm may be remedied.

*In re Nordlund*, 494 B.R. 507, 523 (Bankr. E.D. Cal. 2011). When a creditor contumaciously defies the discharge injunction, it deprives a debtor of the peace of mind inherent in the Bankruptcy Code's "fresh start" policy, but it may not always result in pecuniary losses to the debtor. The broad equitable power in the bankruptcy court's civil sanctioning authority is sufficient to compensate debtors for damages incurred by violations of the discharge injunction, including emotional distress damages.

## CONCLUSION

Based on the foregoing, we REVERSE the bankruptcy court's order dismissing with prejudice Debtors' claim for violations of § 524(i), and we REMAND for further proceedings consistent with this decision.[10]

---

[10] The Ninth Circuit held in *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1188 (9th Cir. 2011), that "a motion for contempt for violation of a discharge injunction under § 524 must be brought via motion in the bankruptcy case, not via an adversary proceeding." However, neither party contests the bankruptcy court's authority to grant relief for violations of § 524 through the adversary complaint, and we consider it harmless error. Because the only remaining cause of action is for violations of § 524(i), on remand the action may continue as an adversary proceeding, or the bankruptcy court may convert it to a contested matter. *See In re McLean*, 794 F.3d at 1326.